# FORM FOR USE IN APPLICATIONS

## FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254 MISCELLANEOUS

**B-00-042**

Name: _____ DAN L. INGHAM _____

Prison Number: _____ 309147 _____   **B-01-001**

Place of Confinement: _____ James V. Allred Unit, TDCJID, 2101 FM 369 N., _____

_____ Iowa Park, Texas 76367-6568 _____

_____

United States District Court _____ SOUTHERN _____ District of _____ TEXAS _____
                              BROWNSVILLE DIVISION

Case No. _____
         (to be supplied by Clerk of U.S. District Court)


_____ DAN L. INGHAM _____, **PETITIONER**
(Full name)

                    **v.**

GARY L. JOHNSON, DIRECTOR, Texas
Department of Criminal Justice, Institutional Division
_____, **RESPONDENT**
(Name of Warden, Superintendent, Jailor, or authorized
person having custody of petitioner)




(If petitioner is attacking a judgment which imposed a sentence to be
served in the <u>future</u>, petitioner must fill in the name of the state
where the judgment was entered. If petitioner has a sentence to be
served in the <u>future</u> under a federal judgment which he wishes to attack,
he should file a motion under 28 U.S.C. § 2255, in the federal court
which entered the judgment).

## PETITION

1.  Names and location of court which entered the judgment of
    conviction under attack 197th District Court, Cameron County,
    _____Brownsville, Texas_____

2.  Date of judgment of conviction ___July 30, 1980_____

3.  Length of sentence __LIFE_____ Sentencing judge Samual Hester

4.  Nature of offense or offenses for which you were convicted:  (all
    counts) _Murder & Manslaughter_____
    _____
    _____
    _____

5.  What was your plea?  (check one)
    (a)  Not guilty         (XXX)
    (b)  Guilty             (   )
    (c)  Nolo contendere    (   )
    If you entered a guilty plea to one count or indictment, and a not
    guilty plea to another count or indictment, give details:
    _____N/A_____
    _____
    _____

6.  Kind of trial:  (check one)
    (a)  Jury               (XXX)
    (b)  Judge only         (   )

7.  Did you testify at the trial?  Yes (   )    No (XXX)

8.  Did you appeal from the judgment of conviction?
    Yes (XXX)    No (   )

9.  If you did appeal, answer the following:
    (a)  Name of court _13th Court of Appeals; 679 S.W.2d 503 (TCA 1984)
    (b)  Result Reversed; then reversed again on State's PDR_____
    (c)  Date of result ___1984_____

10. Other than a direct appeal from the judgment of conviction and
    sentence, have you previously filed any petitions, applications, or
    motions with respect to this judgment in any court, state or
    federal?   Yes (XXX)    No (   )

11. If your answer to 10 was "yes," give the following information:
    (a)  (1) _Name of court Texas Court of Criminal Appeals;_____
         (2)  Nature of proceeding _habeas corpus_____

         (3)  Grounds raised (1st) defective jury instructions;
              (2) IAC-appellate counsel; (3) IAC-trial; (4) prosecut-
              orial misconduct; (5) extraneous offense; (6)hearsay;
              (2nd) ex post facto violations by Parole Board and
              denial of due  process/confrontation in prison
              disciplinary proceedings._____
              _____

2.

CMPDF - www.texcu.com

    (4)  **Did you receive an evidentiary hearing on your petition,**
        **application c/ motion?**    **Yes ( )**    **No (XXX)**
    (5)  **Result** _denied w/o written order_
    (6)  **Date of result** _11/18/87_ Writ No. 17,531-Ø1

**(b)**  **As to any second petition, application or motion give the same information:**
    (1)  **Name of court** _Texas Court of Criminal Appeals_
    (2)  **Nature of proceeding** _state habeas corpus_

    (3)  **Grounds raised** _IAC-trial; IAC-appeal; improper_
        _jury argument by prosecutor; improper use of_
        _hearsay and extraneous matters_

    (4)  **Did you receive an evidentiary hearing on your petition,**
        **application or motion?**    **Yes ( )**    **No (XXX)**
    (5)  **Result** _Denied w/o written order_
    (6)  **Date of result** _Ø6/19/96  Writ No. 17,531-Ø2_

**(c)**  **As to any third petition, application or motion, give the same information:**
    (1)  **Name of court** _Texas Court of Criminal Appeals_
    (2)  **Nature of Proceeding** _State habeas corpus_

    (3)  **Grounds raised** _(1) Application of new parole laws to_
        _Petitioner violates ex post facto laws and (2) Petitioner_
        _was denied due process and rights of confrontation in_
        _prison disciplinary proceedings._

    (4)  **Did you receive an evidentiary hearing on your petition,**
        **application or motion?**    **Yes ( )**    **No (XXX)**
    (5)  **Result** _Denied w/o written order_
    (6)  **Date of result** _11/15/2000  Writ No. 17, 531-Ø3_

**(d)**  **Did you appeal to the highest state court having jurisdiction the result of any action taken on any petition, application or motion:**
    (1)  **First petition, etc.**    **Yes (XXX)**  **No ( )**
    (2)  **Second petition, etc.**  **Yes (XXX)**  **No ( )**
    (3)  **Third petition, etc.**    **Yes (XXX)**  **No ( )**

**(e)**  **If you did _not_ appeal from the adverse action on any petition, application or motion, explain briefly why you did not:**

    _All grounds presented in all three state writs have been_
    _fairly presented to every available state court at each_
    _available  level._

CVAPDF - www.texas.com

12. State <u>concisely</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. If necessary, you may attach pages stating additional grounds and <u>facts</u> supporting same.

   CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

   For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them. However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

   If you select one or more of these grounds for relief, you must allege facts in support of the grounds or grounds which you choose. Do not check any of the grounds listed below. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

   (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
   (b) Conviction obtained by use of coerced confession.
   (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
   (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
   (e) Conviction obtained by a violation of the privilege against self-incrimination.
   (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
   (g) Conviction obtained by a violation of the protection against double jeopardy.
   (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
   (i) Denial of effective assistance of counsel.
   (j) Denial of right of appeal.

   NOTE: If Petitioner asserts denial of effective assistance of counsel (ground "i"), he <u>must</u> describe with particularity the factual basis for his claim (e.g., lawyer failed to raise insanity defense), <u>and</u> he must describe the prejudice allegedly suffered as a result of the denial of effective assistance of counsel (e.g., convicted of crime that Petitioner lacked the mental capacity to commit).

4.

12.A   Ground One:   Petitioner Dan L. Ingham is being denied due process of law by the retroactive application of "new" parole laws to him by the Texas Board of Pardons & Paroles which now eliminate his mandatory supervision release date that was previously available to him under the law in effect at the time of his trial, in violation of federal ex post facto violations.

Supporting FACTS:   (Appendix-A, at pages 2-3, 5, 6-11).

1. Petitioner Dan L. Ingham was sentenced in July 1980 to Life imprisonment, for murder.  The offense occurred in March 1980.

2. He was convicted under the laws of the 65th Texas Legislation.

3. Under the law in effect at the time of his offense, Petitioner Dan L. Ingham was entitled to be released to mandatory supervision when his flat-time served plus his good-time earned equalled 1/3rd of his sentence, or 20 calendar years, whichever came first.  Because his judgment and sentence contains an affirmative finding on the use of a deadly weapon during the commission of the offense, to-wit: a firearm, the sentence is "aggravated."  Under Texas law in effect at the time of the offense this means the Petitioner must serve one-third of his sentence flat, or 20 calender years before being released to mandatory supervision.

4. A Life sentence is calculated for mandatory supervision release and parole eligibility based on 60 years.

**5.**

5. Subsequent to the Petitioner's conviction, the Texas Board of Pardons & Paroles changed their mandatory supervision scheme several times.  Some of those changes modified the application of mandatory supervision release, and eliminated in other cases.  Those changes were invariably applied retroactively to all prisoners, including prisoners convicted before their effective date, which includes this Petitioner.

6. The Texas Legislature also enacted numerous changes in the mandatory supervision scheme subsequent to the Petitioner's conviction date.  Those changes also eliminated mandatory supervision in some cases and allowed the Board of Pardons & Paroles wide discretionary powers in other cases whether to honor or to deny mandatory supervision.  These new changes have also been applied retroactively to prisoners, including to prisoners convicted before their effective date, which includes this Petitioner.

7.  Because of this retroactive application, the Petitioner's mandatory supervision release date has been eliminated, revoked or denied and he has been given a two-year "set off" by the Board of Pardons & Paroles.

12.B  <u>Ground Two:</u>  Petitioner Dan L. Ingham has been denied due process of law and a fair hearing when he was denied the right of confrontation and cross-examination of his accusor during the prison disciplinary hearing, and denied the right to present witnesses or their statements in his behalf.

**6.**

Supporting FACTS: (Appendix-A, at pages 4-6, 11-15).

1.  On October 24, 1999, and within five (5) months of his date to be released to mandatory supervision, Petitioner Dan L. Ingham received a prison disciplinary case wherein he was charged, albeit falsely and erroneously, with threatening a corrections officer and failure to show his identification card.

2.  During the disciplinary hearing, the charging correctional officer was no physically present so a speaker phone was used.  The speaker phone malfunctioned midway through the hearing and the Disciplinary Hearing Officer ("DHO") used a standard telephone to talk with the accusing officer.

3.  The officer's end of the conversation was not repeated to the Petitioner and was not repeated into the cassette-tape recorder.  This procedure violated established prison policy. The Petitioner did not see his accusor and did not hear the charging officer's testimony to the DHO.  Petitioner could not cross-examine his accusor and was denied the opportunity to confront the officer about the false charges.  The Petitioner was never informed of what the charging officer said to the DHO.

4.  Moreover, the Petitioner's witnesses were not called to testify in his behalf and his witnesses' statements were ignored or not allowed.

5.  The Petitioner was subsequently found guilty and punishment was assessed at 45-days commissary restriction and 45-days recreation restriction, and he was demoted in time-earning status from Trusty Status-3 to Trusty Status-4.

**7.**

6.  To be certain, the Petitioner is not here complaining of the commissary and recreation restriction, but is complaining that the major disciplinary case itself and his subsequent demotion in time earning status has visited great harm on him by extending his incarceration for another two-years beyond the 20-years expected for his release to mandatory supervision, i.e., from March 2000 to March 2002.

7.  The reduction of his time-earning status and the elimination of his mandatory supervision release date are the subjects of this suit.

8.  The Petitioner's grievances on the matter and his letter to the Warden were ignored, not answered, or not responded to.

9.  The Petitioner claimed at state level that he has a legitimate and liberty interest and due process right in his time-earning status and in his mandatory release date of March 2000 under the 65th Texas Legislation.

10. As a direct and proximate cause of the effect of the new law as it is being applied retroactively to prisoners receiving disciplinary cases within 1-year of their mandatory release date, the Petitioner was denied release to mandatory supervision and received a two-year "set off."

11. Moreover, it has become the policy, custom, practice or procedure for the Board of Pardons & Paroles to no longer honor mandatory supervision release dates for those Texas state prisoners convicted under the 65the Legislation (the law in effect at the time of the commission of the offense in this case), but to apply the most current law to all prisoners on a

**8.**

CNsPDF www.fastio.com

wholesale or across-the-board basis, regardless of their conviction date.

12. The retroactive application of the new laws have visited great harm on this Petitioner for the reasons that: (1) it is an ex post facto application of the new law; (2) the Petitioner is being denied release to mandatory supervsion; and (3) the Petitioner's incarceration is being unlawfully extended for an additional two (2) years beyond the 20 flat calendar years required for release to mandatory supervision under the law in effect at the time of the offense.

12.C. Subsequent Writ & Limitations Under AEDPA:

(i) Subsequent Writ: The instant petition for writ of habeas corpus does not challenge the merits of the underlying conviction, but arises out of incidents over which the Petitioner had no control and which occurred subsequent to his previous habeas petition and within the past twelve (12) months.

(ii) Federal Court Proceedings: Petitioner Dan L. Ingham, through the assistance of counsel, filed his initial federal petition on March 17, 1988. Dan L. Ingham v. Gary L. Johnson, Director, Civil Action No. B-99-206. On November 15, 1991, he filed an amended petition. On March 2, 1995, counsel filed an unopposed motion to dismiss to allow Petitioner to return to state court and exhaust all remedies under state law. On March 20, 1995, this Court granted that motion and dismissed the case without prejudice subject to refiling after exhaustion of

**9.**

Petitioner's claims. After the second state application was denied without written order by the Texas Court of Criminal Appeals, the federal petition was refiled in this Court by counsel on June 20, 1997. Rather than being assigned a new cause number, it was filed under the same cause number B-88-42. Thereafter, on December 23, 1999, the Court assigned cause number B-99-206 to this action and ordered the Respondent to file a responsive pleading by January 21, 2000.

On or about January 21, 2000, the Respondent filed a motion for summary judgment. The motion for summary judgment was not served on Dan L. Ingham and, without his consent or approval or knowledge, Mr. Ingham's counsel did not file a reply to the Respondent's motion. The Court thereafter issued a judgment in favor of the Respondent on August 30, 2000.

Upon learning of the judgment and counsel's failure to file any reply to the Respondent's motion for summary judgment, the Petitioner instructed counsel to file a motion for relief from the Court's order dated August 30, 2000, (filed September 14, 2000 by counsel). Petitioner also filed a pro se motion for leave to file a pro se supplement in support of counsel's motion for relief from judgment (filed October 2, 2000). To Petitioner's knowledge, no further action has been taken on the motions or this cause to date by this Court. It was while this action was pending before the Court that the facts and circumstances occurred in October 1999 giving rise to the instant federal habeas corpus petition challenging the unlawful disciplinary proceedings and the ex post facto application of the new mandatory supervision release laws to this Petitioner.

**10.**

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them: _____

    _____ Grounds For Relief 12.A and 12.B herein were not previously presented in the federal petition because the facts and circumstances giving rise to the instant claims had not occurred at the time the previous petition was filed, but arises from incidents occurring subsequent to the previous petition.  Please see and consider 12.C, above.
    _____
    _____
    _____
    _____
    _____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes (XXX)  No (  )  See 12.c, above.

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:
    (a) At preliminary hearing  John Woods, Brownsville, Texas
        (deceased).
    (b) At arraignment and plea  John Woods, supra.

    (c) At trial      John Woods, supra.

    (d) At sentencing John Woods, supra.

    (e) On appeal       Phil Burlinson, Dallas, Texas, of Burlinson,
        Payton and Gibson
    (f) In any post-conviction proceeding      Joseph A. Connors,
        P.O. Box 5838, McAllen, Texas 78502-5838
    (g) On appeal from any adverse ruling in a post-conviction proceeding  Joseph Connors, and now proceeding pro se

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    Yes (XXX)     No (  )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    Yes (  )    No (XXX)

    (a) If so, give name and location of court which imposed sentence to be served in the future: _____
        _____

    (b) And give date and length of sentence to be served in future:

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?    Yes (  )    No (  )

11.

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on ___December 8, 2000___
        **(Date)**

_Dan L. Ingram_
        **(Signature)**

_____
**Signature of Attorney**
    **(if any)**

**12.**

IN THE

COURT OF CRIMINAL APPEALS

AT AUSTIN, TEXAS          Filed w/ DC
9/1/2000

————————————————

| | | |
|---|---|---|
| EX PARTE | § | IN THE   DISTRICT   COURT |
| DAN INGHAM, | § | 197TH JUDICIAL DISTRICT |
| APPLICANT. | § | CAMERON   COUNTY,   TEXAS |

————————————————

(On Appeal In Cause   No. 80-CR-123-C From The
187th District Court, Cameron County, Texas)

————————————————

————————————————

APPLICATION FOR WRIT OF HABEAS CORPUS
[Article 11.07, V.A.C.C.P.]

————————————————

SUBMITTED BY:
Dan Ingham #309147
Applicant, Pro Se
James V. Allred Unit
2101 FM 369 North
Iowa Park, TX 76367

OF ASSISTANCE ONLY:
Jimmy D. Pemberton, Ph.D., CPL
(NCOP Reg. No. 1046297)

APPENDIX- A (to federal petition)

## TABLE OF CONTENTS

Page

I    CONFINEMENT AND RESTRAINT . . . . . . . . . . . . .    1

II   GROUNDS FOR RELIEF  . . . . . . . . . . . . . . . .    2

Ground For Relief No. 1:

The Applicant is being denied due process of law
by the retroactive application of "new" mandatory
supervision laws to him which now eliminates his
mandatory supervision release date, in violation of
federal and state ex post facto prohibitions  . . .    2

Ground For Relief No. 2:

Applicant was denied due process of law and a
fair hearing when he was denied the right of
confrontation and cross-examination of his accuser
during the prison disciplinary hearing, and denied
the right to present witnesses or their statements
in his behalf . . . . . . . . . . . . . . . . . . . .    2

III  A STATEMENT OF THE FACTS  . . . . . . . . . . . . :    2

IV   ARGUMENTS AND AUTHORITIES . . . . . : . . . . . . .    6

Ground For Relief No. 1 - Restated  . . . . . . . .    6

A. Habeas Corpus Is The Correct Vehicle . . . . . .    6

(i)  Exhaustion  . . . . . . . . . . . . . . . .    6

(ii) Subsequent Writ . . . . . . . . . . . . . .    7

B. Protected Liberty Interest In
Mandatory Supervision  . . . . . . . . . . . .    8

Ground For Relief No. 2 - Restated  . . . . . . . .    11

V    REQUEST FOR EVIDENTIARY HEARING . . . . . . . . . .    15

VI   REQUEST FOR DISCOVERY . . . . . . . . . . . . . . .    15

VII  CONCLUSION, PRAYER AND RELIEF REQUESTED . . . . . .    16

UNSWORN DECLARATION  . . . . . . . . . . . . . . . . . .    17

EXHIBIT LIST (A1 - H20) . . . . . . . . . . . . . . . .    18

CtlsPDF - www.fasiso.com

Cause No. <u>80-CR-123-C</u>

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| DAN INGHAM, | § | 197TH JUDICIAL DISTRICT |
| APPLICANT. | § | CAMERON COUNTY TEXAS |

AURORA DE LA GARZA DIST. CLERK

SEP 0 1 2000

CLERK OF CAMERON COUNTY TEXAS

## <u>APPLICATION FOR WRIT OF HABEAS CORPUS</u>

TO THE HONORABLE JUDGE OF THE SAID COURT:

COMES NOW Dan Ingham ("Applicant") and, proceeding <u>pro se</u> presents this, his post-conviction application for writ of habeas corpus pursuant to Article 11.07, Tex. Code Crim.Pro., and would show the following, to-wit:

### I.

### <u>CONFINEMENT AND RESTRAINT</u>

1. Applicant is illegally confined and restrained of his liberty at the James V. Allred Unit, 2101 FM 369 North, Iowa Park, Texas 76367, under prisoner number 309147.

2. Applicant is illegally confined and restrained of his liberty by Gary L. Johnson, acting in his official capacity as Director of the Texas Department of Criminal Justice, Institutional Division, pursuant to a judgment of conviction in Cause No. 80-CR-123-C from the 197th District Court of Cameron County, Texas, wherein Applicant was convicted by jury of the felony offense of murder and punishment was assessed at Life imprisonment. <u>Exhibit-A</u>, Judgment & Sentence, attached. (The originals are available to this Court through the files of the District Clerk.)

Page 1.

9/8/00

2

3. Applicant is illegally confined and restrained of his liberty by the Texas Board of Pardons & Paroles, acting in its official capacity as the final policy maker, promulgator and decision-maker on the mandatory supervision release of Texas prisoners, pursuant to the said judgment of conviction in Cause No. 80-CR-123-R.  <u>Exhibits A & B</u>.

4. Because the Applicant was charged with an offense that occurred between 1977 and 1987, he was convicted under the laws of the 65th Legislation, i.e., the law in effect at the time of his offense.

II.

<u>GROUNDS FOR RELIEF</u>

(1)

The Applicant is being denied due process of law by the retroactive application of "new" mandatory supervision laws to him which now eliminates his mandatory supervision release date, in violation of federal and state <u>ex post facto</u> prohibitions. U.S. Const., Art. I, § 9, cl. 3, and § 10, cl. 1, Amend. 14; Tex. Const., Art. I, §§ 10, 16 and 19.

(2)

Applicant was denied due process of law and a fair hearing when he was denied the right of confrontation and cross-examination of his accuser during the disciplinary hearing, and denied the right to present witnesses or their statements in his behalf.  U.S. Const., Amends. 6 and 14;  Tex. Const., Art. I, §§ 10 and 19.

III.

<u>A STATEMENT OF THE FACTS</u>

1. In July 1980, Applicant Dan Ingham was convicted by a jury in the 197th Judicial District Court of Cameron County, Texas in Cause No. 80-CR-123-C wherein he was charged with murder.  Said offense occurred in March 1980.

3

2. Applicant was convicted under the laws of the 65th Texas Legislation.

3. Under the law in effect at the time of his offense Applicant would be released to Mandatory Supervision when his flat-time served and his good time earned equalled one-third of his sentence or twenty (20) calendar years, whichever is longer. Because of the affirmative finding of a deadly weapon, to-wit: a firearm, the sentence is "aggravated". This means the Applicant must serve one-third of his sentence flat, or 20 calendar years, before being released to Mandatory Supervision.

4. For parole eligibility review and for Mandatory Supervision purposes, a Life sentence is calculated on a 60 (sixty) year basis. Hence, the 20 years or 1/3rd date. Exhibit-C (excerpts from the Brooke's calculation chart).

5. Subsequent to the Applicant's imprisonment, the Texas Board of Pardons & Paroles changed their Mandatory Supervision scheme several times. Those changes were invariably applied retroactively to all prisoners including prisoners convicted before the effective date of the new rules.

6. The Texas legislation also enacted numerous changes in the Mandatory Supervision scheme subsequent to the Applicant's conviction. Tthose changes eliminated Mandatory Supervision in certain cases and allowed the Board of Pardons & Paroles discretionary power whether to honor or to deny Mandatory Supervision in other cases. These new changes in Mandatory Supervision by Legislation have been applied retroactively by the Board of Pardons & Paroles to the Applicant.

4

7.  Because of this retroactive application, the
Applicant's Mandatory Supervision release date has been
eliminated, revoked or denied, and he has been given a 2-year
"set off" by the Board of Pardons & Paroles.  Exhibit-B.

8. On October 24, 1999, and within five (5) months of his
Mandatory Supervision release date, the Applicant received a
disciplinary case wherein he was charged, albeit falsely and
erroneously, with threatening a corrections officer and failure
to show his identification card.  Exhibit-D.

9. During the disciplinary hearing, the officer was not
physically present, so a speaker phone was used.  The speaker
phone broke mid-way through the hearing  and the Disciplinary
Hearing Officer ("DHO"), Captain Boyle, used a standard
telephone to talk with the accusing officer.

10. The officer's end of the converstation was not repeated
to the Applicant and was not repeated into the cassette-tape
recorder.  The Applicant did not see or hear the officer.  He
could not cross-examine the accusing officer and he could not
confront the officer about the false charges.  The Applicant was
never informed of what the accusing officer said to the DHO.

11. Moreover, the Applicant's witnesses were not called to
testify in his behalf and their statements were ignored or not
allowed.  Exhibits E-1 through E-4.

12. The Applicant was found guilty and punishment was
assessed at 45-days commissary restriction and 45-days
recreation restriction, and he was demoted in time-earning status
from State Approved Trusty 3 to State Approved Trusty 4, i.e.,
S-3 to S-4.

5

13. The disciplinary case and the demotion in time earning class has visited harm upon the Applicant by extending his incarceration two-years beyond the 20 years expected for his release to Mandatory Supervision , from March 2000 to March 2002.

14. The reduction in time-earning status and the elimination of his Mandatory Release date is the subject of this suit; S-3 to S-4, Mandatory Supervsion release from 3/2000 to 3/2002.

15. The Applicant's grievance on the matter was denied and his letter to the Warden was ignored.  See <u>Exhibits</u> <u>F-1</u> through <u>F-3</u>, and <u>G</u>.

16. The Applicant has a liberty interest and due process interest in his time-earning status and in his Mandatory Release date  of March 2000 under the 65th Legislation.

17. As a direct and proximate cause of the effect of the new law as it is being retroactively applied to inmates receiving disciplinary cases within 1-year of their mandatory supervision release date, the Applicant was denied release to Mandatory Supervision and received a "set off." <u>Exhibit-B</u>.

18. Moreover, it has become the policy, custom, practice or procedure for the Board of Pardons & Paroles to no longer honor Mandatory Supervision dates under the 65th Legislation (the law in effect at the time of the offense in this case), but to apply the current law to all prisoners , regardless of their conviction date.

19. The retroactive application of the new laws have visited great harm upon your Applicant for the reasons that: (i) it is an <u>ex</u> <u>post</u> <u>facto</u> application of the new law; (ii) he is being denied release to Mandatory Supervision; and, (iii) his

6

incarceration is being extended for two additional years beyond
the 20 flat calender years required for release to Mandatory
Supervision under the law in effect at the time of the offense.

IV.

ARGUMENTS AND AUTHORITES

Ground For Relief No. 1 - Restated

The Applicant is being denied due process of law by the
retroactive application of the "new" laws to him, thereby
eliminating his mandatory supervision release date and extending
his incarceration by two years, in violation of federal and
state ex post facto prohibitions. U.S. Const., Amend. 14,
Art. I, § 9, cl. 3, and § 10, cl. 1; Tex. Const., Art. I, §§ 10,
16 & 19.

A. Habeas Corpus Is The Correct Vehicle

(i) Exhaustion: The doctrine of exhaustion requires that
a prisoner's federal claims be fairly presented to the highest
court of the State either on direct review of the conviction or
in a post-conviction attack. Fisher v. State, 169 F.3d 295, 302
(5th Cir. 1999); Deters v. Collins, 985 F.2d 789, 795 (5th
Cir. 1993); Myers v. Collins, 919 F.2d 1074 (5th Cir. 1990);
Richardson v. Procunier, 762 F.2d 429 (5th Cir. 1985). Under
Texas law, a claim challenging the duration of a prisoner's
confinement and applicable time earning credits is a proper
subject for a writ of habeas corpus under Article 11.07,
Vernon's Annotated Code of Criminal Procedure. Ex Parte
Ruthart, 980 S.W.2d 469, 470 (Tex.Cr.App. 1998). Additionally,
a claim that parole or mandatory supervision or other form of
administrative release has been unlawfully revoked (or denied)
must be brought to the attention of the convicting court through
a writ of habeas corpus under Article 11.07. Board of Pardons &

CIMPDF - www.texisi.com

Paroles v. Court of Appeals for the Eighth District, 910 S.W.2d 481, 483 (Tex.Cr.App. 1995). Here, Dan L. Ingham is alleging that the disciplinary action resulted in a change to his good-time earning status, that the disciplinary case unlawfully extended the date for his release to mandatory supervision and, that the elimination of his mandatory supervision release date was an ex post facto violation.   State prisoners who allege they have been improperly denied release to their mandatory supervision date fall under the habeas corpus statutes. Malchi v. Thaler, 211 F.3d 953, at 956 (5th Cir., May 23, 2000), favorably citing Preiser v. Rodriquez, 93 S.Ct. 1827 (1973); see also McGary v. Scott, 27 F.3d 181, 183 (5th Cir. 1994) (improper denial of good-time credits extending prisoner's incarceration subject to habeas corpus); Story v. Collins, 920 F.2d 1247-1251 (5th Cir. 1991).   Thus, the Applicant's instant claims arise under the state habeas corpus scheme rather than a civil rights or other claim, and he is properly before this Court.

        (ii) Subsequent Writ: The instant application does not challenge the merits of the underlying conviction, but arises out of incidents over which the Applicant had no control and which occurred subsequent to his previous habeas application. Hence, this application is the proper vehicle for this matter since he is not challenging the merits of the conviction and the facts and the claims were not available to him at the time of the previous habeas application.   Article 11.07, § 4, Tex. Code Crim.Pro.. See Ex Parte Whiteside, 12 S.W.3d 819, 820 (Tex.Cr.App. 2000); Ex Parte Evans, 964 S.W.2d 643, 646-647 (Tex.Cr.App. 1998).

8

B. <u>Protected Liberty Interest In Mandatory Supervision</u>

Habeas corpus lies when a prisoner has been deprived of some right secured to him or her by the United States Constitution. <u>Malchi v. Thaler,</u> 211 F.3d 953, at 957 (5th Cir. 2000), citing <u>Orellana v. Kyle</u>, 65 F.3d 29, 31 (5th Cir. 1995) (internal citations and quotations omitted). Mr. Ingham's action is bottomed on his claims that the elimination of his mandatory supervision release date and the reduction of his good-time earning status imposed as a result of the disciplinary proceeding implicates the Due Process Clause because it delays his release from prison under Texas's mandatory supervision law. <u>Malchi</u>, 211 F.3d at 957.

State prisoners may become eligible for release under Texas law on parole or under a mandatory supervision release program. <u>Malchi</u>, 211 F.3d at 957, citing <u>Madison v. Parker</u>, 104 F.3d 765, 768 (5th Cir. 1997). Subsequent to <u>Madison</u>, the Fifth Circuit held that a prisoner must bring a habeas action rather than a civil rights suit to restore his lost mandatory release date or to recover good-time credits lost in a disciplinary hearing. <u>Malchi</u>, 211 F.3d at 957 n. 3, citing favorably <u>Clarke v. Stalder</u>, 154 F.3d 186, 189 (5th Cir. 1998).

"Parole" in Texas is defined by the Fifth Circuit as the <u>discretionary</u> <u>and</u> <u>conditional</u> release of an eligible prisoner who may serve the remainder of his or her sentence under supervision and control of the pardons and paroles division. <u>Id</u>. at 957, quoting <u>Madison</u>. "Mandatory supervision" on the other hand is the <u>release</u> of a prisoner so that the prisoner may

9

serve the remainder of his or her sentence not on parole but under the supervision and control of the pardons and paroles division.  See Malchi, 211 F.3d at 957, quoting Madison.

Because it is entirely speculative whether a prisoner will be released on parole, courts have determined that there is no constitutional expectancy of parole in Texas.  Id. at 957, quoting Madison at 768.  However, we are dealing with a mandatory supervision release date in this case, and not parole.  Hence, the issue is subject to habeas action. Malchi, 211 F.3d at 957, relying on Madison.  And liberty interest prevails.

In Madison v. Parker, 104 F.3d 765 (5th Cir. 1997), the court observed that former Texas Code of Criminal Procedure article 42.18 § 8(c) provides for mandatory supervision release and that a prisoner who is not on parole "**shall be released** to mandatory supervision." Malchi, 211 F.3d at 957 n. 4, relying on Madison and article 42.18(c) (emphasis added).

Moreover, in following Madison the Malchi court determined that the language of the Texas statute paralleled the provisions of the Nebraska statute interpreted in Wolff v. McDonnell, 94 S.Ct. 2963 (1974), because both statutes bestow mandatory sentence reductions for good-time behavior.  Malchi at 957, citing Madison, 104 F.3d at 768.  The Madison court recognized that Wolff held that the Nebraska statute creates a "liberty interest" in the mandatory supervision release date for prisoners.  Malchi at 957.  Madison also noted that Sandin v. Conner, 115 S.Ct. 2293 (1995), did not disturb the holding in Wolff "that the loss of good time credits under a state statute

10

that bestowed mandatory release and mandatory sentence reductions for good behavior must be accompanied by certain procedural safeguards in order to satisfy due process." Malchi at 957, citing Madison at 769. Finally, the Malchi court concluded without question that "pursuant to the Supreme Court's decision in Wolff there is a constitutional expectancy of early release created by Texas's mandatory supervision scheme in place prior to September 1, 1996." Malchi at 957-958. Applicant's offense date was some sixteen years earlier, in 1980. It is possible that a de minimus delay of a few days in a Texas prisoners' mandatory release would not give rise to a constitutionally cognizable claim. In the present case, however, the evidence shows that the Applicant's release has been delayed for approximately two additional years; more than a de minimus delay and certainly one sufficient to trigger constitutional protection. To be certain, Texas has amended its mandatory supervision scheme to eliminate release to mandatory supervision in some cases and to give the Board discretionary power to honor or to not honor mandatory supervision in other cases. See Texas Government Code § 508.148-.149. (Vern. 1998). Because Dan Ingham is serving a sentence for an offense committed in 1980, prior to the effective date of the new statute, the changes in the law do not apply to him and his release to mandatory supervision is determined under the prior statue. Malchi, 211 F.3d at 958, relying on Madison. Moreover, the historical analysis and Committee Notes to the amended § 508.148-.149, added by Acts 1997, 75th Leg., ch. 165, § 12.01,

CUtilPDF - www.tessio.com

11

eff. Sept. 1, 1997, amended again by Acts 1999, 76th Leg.,
eff. Sept. 1, 1999, specifically state that the new amendment to
Article 42.18(c), Tex.Code Crim.Pro., "applies only to an inmate
convicted of an offense committed on or after the effective date
of this Act." Committee Notes to the 1997 Amendment by the 75th
Legislature state that the amendment was a clarification of the
73rd Regular Legislature's amendments made in 1993. Again,
neither amendment was intended nor declared to be applied
retroactively to offenses occurring before the amendments'
effective date. For purposes of the 1999's amendment applying
only to cases after its effective date, the Committee Notes
state that "for purposes of this subsection, an offense is
committed before the effective date of this Act if any
element of the offense occurs before the effective date." All
other inmates, it says, "are covered by the law in effect when
the offense was committed, and the former law is continued in
effect for that purpose." Id.

Hence, for these reasons, the Applicant is illegally
confined and restrained of his liberty. He should be
immediately released to mandatory supervision.

### Ground For Relief No. 2 – Restated

Applicant was denied due process of law and a fair hearing
when he was denied the right of confrontation and cross-
examination of his accuser during the disciplinary hearing, and
denied the right to present witnesses or their statements in his
behalf. U.S. Const., Amends. 6 and 14; Tex. Const., Art. I, §§
10 and 19.

During the disciplinary hearing, the speakerphone
malfunctioned and the DHO used the standard telephone to
communicate with the charging corrections officer. The

officer's statement and answers were not repeated to the
Applicant and were not repeated into the cassette tape
recorder.  Hence, the Applicant was denied the right to confront
and cross-examine his accuser.  Moreover, the DHO basically
ignored everything the Applicant said and ignored his witness
statements and denied him the right to present his witnesses.
See Exhibits E-1 through E-4 and F-1 through F-3, attached.

The most basic due process right is the right to be heard.
That due process right was violated when the DHO in this case
refused to listen to the Applicant, when the Applicant was
denied the right to present his witnesses, and when their
written statements were ignored. Jackson v. Cain, 864 F.2d 1235,
1252 (5th Cir. 1989); McCann v. Coughlin, 698 F.2d 112, 123 (2nd
Cir. 1983) (prisoner tried to present a defense to one charge,
was interrupted and told that the disciplinary committee was
moving on to the next charge);  Mack v. Johnson, 430
F.Supp. 1139, 1145 (E.D. Pa. 1977) (prisoner refused permission
to explain why he denied the charges), affirmed, 582 F.2d 1275
(3rd Cir. 1978); see Pino v. Dalsheim, 605 F.Supp. at 1318 (DHO
required to consider in good faith the substance of the inmate's
defense). A prisoner also has the right to hear; that is, to be
informed of the evidence and testimony against him so that he
can respond and defend himself. Grillo v. Coughlin, 31 F.3d 53,
56 (2nd. Cir. 1994). And prison officials are obligated to take
the necessary steps so that he can hear and be heard. Bonner
v. Arizona Department of Corrections, 714 F.Supp. 420, 425-426
(D.Ariz. 1989).

13

When witnesses are "called" by telephone, the accused prisoner must be able to hear their conversation, e.g., by speakerphone. Some state courts have acknowledged these necessities in connection with witnesses who testify even by telephone. For example, see: <u>Balla v. Murphy</u>, 116 Idaho 257, 775 P.2d 149, 152 (Idaho App. 1987) (witnesses may be interviewed by telephone only if the accused prisoner can speak directly to the witness and can hear his answers); <u>Matter of Plunkett</u>, 57 Wash.App. 230, 788 P.2d 1090, 1093 (Wash.App. 1990) ("If telephonic hearing is used, the inmate ordinarily should have the same opportunity to hear testimony as does the hearing officer. Only then can the prisoner be assured of having an opportunity to give responsive testimony in his or her defense."). In this case, there was no threat to any person, no threat to the charging officer, and no need for extra security measures or to protect the officer and witnesses from the accused. Hence, there was no necessity for the charging officer's absence. There was no threat to the safety or security of the institution or to any person or property.

Absent exceptional circumstances hazardous to institutional safety or correctional goals, none of which were present in this case, prisoners have a right to call witnesses in their behalf and to present witness statements in their behalf during certain prison disciplinary proceedings. <u>Wolff v. McDonnell</u>, 94 S.Ct. 2963 (1974); see also <u>Ruiz v. Estelle</u>, 503 F.Supp. 1265 (S.D. Tex. 1980), 679 F.2d 1115 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983). As a practical matter, it is important

14

for an accused prisoner to have the option of questioning a
witness, or at least of hearing the witness and suggesting
questions for his counsel substitute to ask, to be sure that all
the relevant information is brought out.  Response to given
testimony is, of course, instrumental in this vein. See <u>Balla
v. Murphy</u> and <u>Plunkett</u>, both supra.  Hence, the Applicant was
denied due process of law when he was denied the right to "call"
his witnesses and when their statements were refused and his
personal defense was all but blatantly ignored during the
disciplinary hearing.  Moreover, he should have been informed of
the substance of the officer's testimony.  <u>Daigle v. Hall</u>, 387
F.Supp. 652, 660 (D.Mass 1975) (if testimony is not presented
directly by witnesses, "it nevertheless must be revealed to the
inmate with sufficient detail to permit the inmate to rebut it
intelligently"); <u>Torres v. Coughlin</u>, 166 A.D.2d 793, 563
N.Y.S.2d 152, 153 (N.Y.App.Div. 1990) (officer who was off duty
because of injury should have testified by open telephone).  For
more state examples, see also <u>Green v. Coughlin</u>, 633
F.Supp. 1166, 1168- 1170 (S.D.N.Y. 1986); <u>Lewis v. Faulkner</u>,
559 F.Supp. 1316, 1320 (N.D.Ind. 1983); <u>Devaney v. Hall</u>, 509
F.Supp. 497, 500 (D.Mass 1981); <u>Homer v. Morris</u>, 684 P.2d 64, 68
(Utah 1984).  Here, the facts were in dispute, thereby making it
even more imperative that Applicants' witnesses present
corroborating testimony in his behalf.  Hence, these witnesses
were particularly important in lieu of it being the officer's
word against the Applicant's.  Please see and consider, <u>Graham
v. Baughman</u>, 722 F.2d 441, 445 (8th Cir. 1985); <u>Green v. Nelson</u>,

442 F.Supp. 1047, 1057 (D.Conn. 1977) and <u>Smith v. Maschner</u>, 899 F.2d 940, 946 947 (10th Cir. 1990) (refusal to call a witness raised a material due process question).

Hence, based on the foregoing facts and authorities, the Applicant was denied due process of law and a fair hearing. For these reasons, the writ should issue.

V.

## REQUEST FOR EVIDENTIARY HEARING

Applicant moves this Court to order an evidentiary hearing so that he may establish the facts and develop the record on disputed relevant matters and, he prays that counsel be appointed to him for purposes of that hearing and that a full record be made thereof.

VI.

## DISCOVERY REQUEST

Applicant moves this Court for an order that he be allowed certain discovery, e.g., production of documents and other necessary materials, so that he may develop his claims and establish his facts with regard to the policy, custom and procedures of the Texas Board of Pardons & Paroles with regard to changes in the past twenty (20) years in the mandatory supervision laws and the Board's retroactive application of those changes to prisoners convicted before their effective dates.

16

VII.

## CONCLUSION, PRAYER AND RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERD, Applicant prays that counsel be appointed to assist him in this matter, that discovery be allowed and that a full evidentiary hearing be held and a record made thereof for all purposes. Applicant prays that, after the expiration of time within which the State may answer, the Court find this to be a case in which the writ should issue and thereafter recommend that relief be granted.

Restfully Submitted,


Dan L. Ingham #309147
Applicant, Pro Se
James V. Allred Unit
2101 FM 369 North
Iowa Park, Texas 76367-6568


OF ASSISTANCE ONLY:
Jimmy D. Pemberton, Ph.D., CPL
(NCQP Reg. No. 1046297)

40

17

## UNSWORN DECLARATION

I, the undesigned, hereby declare under penalty of perjury that my name is Dan L. Ingham. I am a State prisoner, presently confined at the Allred Unit, Iowa Park, Texas under prisoner number 309147. I am the applicant in the forgoing application for writ of habeas corpus. I have read its contents and declare the facts therein to be true and correct.

DECLARED TO under penalty of perjury this __25__ day of August, 2000, at Wichita County, Texas.

Dan L. Ingham/#309147
Declarant/Applicant, Pro Se

a\

18

## **EXHIBITS**

| No. | Document | Page |
|-----|----------|------|
| A | Judgment & Sentence in Cause No. 80-CR-123-C | 1-5 |
| B | Parole "Set-Off" | 6 |
| C | "Brooks" Chart (page 1, excerpt) | 7 |
| D | Disciplinary Report #20000063928 | 8 |
| E1 | Witness Statement of "Sonny" Bonner, Jr. #390461 | 9 |
| E2 | Witness Statement of Kevin Simon #741072 | 10 |
| E3 | Witness Statement of Chris Fair #847531 | 11 |
| E4 | Witness Statement of Xavier Garcia #553598 | 12 |
| F1 | Step-1 Grievance dated 11/19/99 re: Disciplinary Case No. 20000063928 | 13 |
| F1A | Step-1 Grievance dated 1/18/2000 re: failure to return or answer Step-1 dated 11/19/99 | 14 |
| F2 | IOC fr: Susan L. Schumacher, Admin. Grievance, dated 5/23/200 re: grievance #20000104679 was reviewed at Unit level, case was closed 5/11/2000 | 15 |
| F3 | I-60 to Director of Grievances, dated 5/12/00 see above response F2 | 16 |
| F3 | I-60 (2 pp) dated 1/11/2000 to UGC re: what happened to Step-1 filed on 11/19/99? | 17-18 |
| G | Ltr to: Warden Woods dated 1/27/00 re: what happened to Step-1 grievance filed 11/19/00 | 19 |
| H | Ltr to Wayne Scott, Executive Director, dated 2/21/2000 re: false disciplinary charge; Step-1 has been lost; unfairness of hearing. | 20 |
| I | Statement of Dan Ingham, dated 10-24-99 (2 pp) | 21-22 |

CutePDF - www.kvisio.com

CAUSE NO. 80-CR-123

THE STATE OF TEXAS )        IN THE DISTRICT COURT OF

VS                      :        CAMERON COUNTY, TEXAS

DAN LEE INGHAM )        197TH JUDICIAL DISTRICT

### JUDGMENT OF CONVICTION

BE IT REMEMBERED that on the 21st day of July, 1980, this cause came on for hearing consolidated by agreement of the parties for trial purposes with Cause No. 80-CR-124-C styled State of Texas vs. Dan Lee Ingham and the State appeared by her Assistant Criminal District Attorney, and the Defendant, Dan Lee Ingham, appeared in person, his counsel by employment, the Hon. Jon R. Wood also being present, and the Defendant, having been duly arraigned, pleaded Not Guilty and both parties announced ready for trial; thereupon a jury of good and lawful persons, to wit:  Obidio C. Canales and eleven others, was duly selected, empaneled and sworn according to the law and charged by the Court on separation.  The indictment was read to the jury and the Defendant entered his plea of Not Guilty thereto whereupon the State began presentation of evidence and continued until July 22, 1980 and rested.  Defendant introduced evidence and continued presentation of evidence until July 23, 1980 and rested.  State offered rebuttal evidence.  All parties closed and the jury was sent home until July 24, 1980, whereupon the charge was prepared and submitted to all counsel and the case recessed until July 24, 1980.

THEREAFTER, on July 24, 1980, the Court charged the jury as to the law applicable to said cause and argument of counsel for the State and the Defendant was duly heard and concluded, and the jury retired in charge of the proper officer to consider their verdict, and after ward was brought into

EXHIBIT A                                    Ð                    A1

open court by the proper officer, the Defendant and his coun-
sel-being present, and in due form of law returned into open
court the following verdict, which was received by the Court
and is here now entered upon the Minutes of the Court, to
wit:

> "We, the Jury, find the Defendant, Dan Lee Ingham,
> GUILTY OF THE MURDER OF BRETT MICHAEL BUTLER AS
> CHARGED IN THE INDICTMENT.
>
>                s/Obidio C. Canales
>                Foreman"

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the
Court that the Defendant, Dan Lee Ingham, is guilty of the
offense of Murder as found by the jury, and that said offense
was committed on March 20, 1980.

THEREUPON, the Defendant, having previously elected in
writing to have his punishment assessed by the same jury, the
same jury was duly empaneled to assess said Defendant's
punishment in said cause, and the cause was recessed until
July 25, 1980.

THEREAFTER, on July 25, 1980, all parties announced ready
for hearing on punishment and the evidence submitted for the
State and for the Defendant was duly heard, and at the
conclusion of such evidence, the Court charged the jury with
additional instructions as to the law applicable to punish-
ment of said cause and arguments of State and Defendant were
duly heard and concluded and the jury retired in charge of
the proper officer to consider their verdict as to Defendant's
punishment, and thereafter returned into open court, accompanied
by the proper officer, the Defendant and his counsel being
present, and in due form of law, the following verdict, which
was received by the Court is here now entered upon the
Minutes of the Court, to wit:

> "We, the Jury, having found the Defendant guilty of
> the offense of Murder of Brett Michael Butler in
> this cause, assess his punishment at confinement in
> the Texas Department of Corrections for a period of

A2.

LIFE  (Answer in years not less than five (5) nor
more than ninety-nine (99) or "Life") and in addi-
tion to such confinement, we assess a fine of  NONE
(Answer in dollars and cents or "None").

s/Obidio C. Canales
Foreman"

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT
that the Defendant, Dan Lee Ingham, is guilty of the offense
of Murder as found by the Jury, and that he be punished, as
found by the Jury, that is by confinement in the Texas
Department of Corrections for LIFE, and that the State of
Texas do have and recover of and from said Defendant all
costs in this prosecution, for which execution may issue.

The Court further makes an affirmative finding that the
Defendant used a deadly weapon as defined in Section 1.07(a)
(11), Penal Code of Texas, during the commission of the
felony offense for which the jury has found him guilty in
this cause and accordingly enters such finding in this
Judgment of the Court in accordance with Section 3f(a) (2) of
the Code of Criminal Procedure of Texas.  The Court makes the
further affirmative finding that the deadly weapon the
Defendant used in the commission of the offense for which
this jury has found him guilty in this cause was a firearm
and accordingly the Court additionally enters that finding in
this Judgment likewise in accordance with 3f(a) (2) of the
Code of Criminal Procedure of Texas.

SIGNED FOR ENTRY:  July 30, 1980.

Judge Presiding

A3

IN THE 197TH   DISTRICT COU..T OF
CAMERON COUNTY, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | CHARGE: | Murder |
| VS | NUMBER: | 80-CR-123-C |
| DAN LEE INGHAM | DATE: | August 7, 1980 |
| | TERM: | August, 1980 |

## S E N T E N C E

ON THIS  August 7, 1980  , this cause being again called the
State appeared by her  Assistant  Criminal District Attorney, and the
Defendant  Dan Lee Ingham  was brought into open court, in person, in
charge of the Sheriff (his counsel, by  employment  Hon. Jon R. Wood
also being present), for the purpose of having the sentence of the law
pronounced in accordance with the  Judgment of Conviction  herein ren-
dered and entered against him on  July 25, 1980 . And thereupon, the
Defendant  Dan Lee Ingham   was asked by the Court whether he had
anything to say why said sentence should nöt be pronounced against
him, and he answered nothing in bar thereof. Whereupon, the Court
proceeded, in the presence of the said Defendant  Dan Lee Ingham
to pronounce sentence against him as follows:

It is the order of the Court that the Defendant   Dan Lee Ingham
who has been adjudged to be guilty of  Murder  and whose punishment
has been assessed by the  Jury  at confinement in the Texas Department
of Corrections for a term of  LIFE , be delivered by the Sheriff of
Cameron County, Texas, immediately to the Director of Corrections of
the Texas Department of Corrections, or other person legally
authorized to receive such convicts, and the said  Dan Lee   Ingham
shall be confined in said Texas Department of Corrections for a term
of not less than  five (5)  nor more than  LIFE , in accordance with
the provisions of the law governing the penitentiaries and the Texas
Department of Corrections; it is further ordered by the Court that the
Defendant be credited on this sentence with  one hundred thirty-four
(134)  days, on account of the time spent in jail in said cause since

A4

his arrest and confinement until sentence was pronounced by the Court. And the said  Dan Lee Ingham   is hereby remanded to jail until said Sheriff can obey the directions of this sentence.

The Court in this cause further makes a part of this sentence its affirmative finding as set out in its Judgment of Conviction that the Defendant used and exhibited a firearm in the commission of this offense and that such firearm was a deadly weapon.  Such affirmative finding being made in accordance with Article 3f(a) (2), Code of Criminal Procedure of the State of Texas.

SIGNED FOR ENTRY: September 2, 1980

_____
Judge Presiding

**A5**

BOARD OF PARDONS AND PAROLES

NOTICE OF PAROLE PANEL DECISION

**TDCJ-ID NUMBER:** 

**CELL:** 30

SUBJECT: Decision Not to Grant Parole - NEXT REVIEW

the Board of Pardons and Paroles decision is not to grant you parole and has set your next parole review date of __/__/____

You have been denied parole for the reason(s) listed below:
1) CRIMINAL RECORD AND/OR NATURE OF OFFENSES
2) DISCIPLINARY RECORD - NATURE OF INFRACTION, LOSS OF TIME, OR REDUCTION IN CLASSIFICATION

The Institutional Division will monitor your treatment plan progress and will report your progress to the Board of Pardons and Paroles.

Should you have any questions regarding this notice you are to contact your unit Institutional Parole Office.

**B-6**

# THE BROOKS PAROLE ELIGIBILITY CHART   (Rev. 8/19/97)

| OFFENSE DATE | OFFENSE | LEGISLATURE | PAROLE ELIGIBILITY | Page 1 of 11 |
|---|---|---|---|---|
| **Prior to 1-1-66** | ALL OFFENSES* | 55th | Calendar Time = 1/3, including any bonus & blood donations *<br><br>* (Art. 42.12 was amended on 1-1-66 to allow <u>good time</u> and <u>1/4 time</u> for <u>all persons confined in TDC.</u>) | |
| **1-1-66 thru 8-28-67** | ALL OFFENSES* | 59th | **Calendar Time + Good Time = 1/4**, including any bonus & blood donations<br>**Maximum = 15 yrs.** | |
| **8-29-67 thru 8-28-77** | ALL OFFENSES*<br><br>*TDCJ Data Services calculates eligibility dates on all offenses prior to 8-28-77 utilizing calendar time + good time = 1/3, regardless of the law in effect when the offense was committed. This is apparently due to court rulings during that time period. | 60th | **Calendar Time + Good Time = 1/3**, including any bonus & blood donations<br>**Maximum = 20 yrs.**<br>No Mandatory Supervision: Inmate discharges sentence when calendar time + good time = total sentence<br>Sentence is effectively reduced by the amount of good time earned. | |
| **8-29-77 thru 8-31-87** | Capital Murder<br>Agg. Kidnapping<br>Agg. Rape<br>Agg. Sexual Abuse (8-31-85:  Agg. Rape and Agg. Sexual Abuse combined into Aggravated Sexual Assault)<br>Agg. Robbery<br>Any Offense with Affirmative Finding of Deadly Weapon | 65th<br>69th | Art. 42.12 Sec. 3f (8-29-77 thru 8-31-83)<br>Art. 42.12 Sec. 3g (9-1-83 thru 8-31-87)<br><br>**Calendar Time = 1/3**<br>**Minimum of 2 yrs.**<br>**Maximum of 20 yrs.** | |
| | All other offenses | | **Calendar Time + Good Time = 1/3**, including A, B, or C credits and bonus<br>**Maximum of 20 yrs.** | |
| **9-1-87 thru 8-31-89** | 3g Offenses:<br>Capital Murder<br>Agg. Kidnapping<br>Agg. Sexual Assault<br>Agg. Robbery<br>Any Offense with Affirmative Finding of Deadly Weapon | 70th | All offenses eligible for Mandatory Supervision.<br><br>**Calendar Time = 1/4**<br>**Minimum of 2 yrs.**<br>**Maximum of 15 yrs.** | |
| | All other offenses | | **Calendar Time + Good Time = 1/4**, including work credits and bonus<br>**Maximum of 15 yrs.**<br><br>THE OFFENSES LISTED BELOW ARE <u>NOT</u> ELIGIBLE FOR MANDATORY SUPERVISION:<br><br>CAPITAL MURDER<br>AGG. KIDNAPPING<br>AGG. SEXUAL ASSAULT<br>AGG. ROBBERY<br>ANY OFFENSE WITH AN AFFIRMATIVE FINDING OF A DEADLY WEAPON<br>MURDER, 1ST DEGREE<br>SEXUAL ASSAULT, 2ND DEGREE<br>AGGRAVATED ASSAULT, 2ND & 3RD DEGREE<br>DEADLY ASSAULT ON LAW OR CORRECTIONS OFFICER; COURT PARTICIPANT; PROBATION PERSONNEL; MEMBER OR EMPLOYEES OF<br>(CONTINUED) | |

67

## TDCJ .SCIPLINARY REPORT AND HEA NG RECORD .

CASE: 20000069920 TDCJNO: 00309147 NAME: INGHAM,DAN LEE                    EA: 6.6
UNIT: JA   HSNG: 7H21    25        WRK: GARDEN SQUAD 41 (MEDICAL)           IQ: 115
CLASS: S3  CUST: MI  PRIMARY LANGUAGE: ENGLISH       MHMR RESTRICTIONS:    NO
GRADE: MA / CC    OFF.DATE: 10/24/99   OR:45 AM   LOCATION: JA MISCELLANEOUS
TYPE: ID

### OFFENSE DESCRIPTION

ON THE DATE AND TIME LISTED ABOVE, AND AT 3 DESK AREA, OFFENDER: INGHAM,DAN LEE
TDCJ-ID NO. 00309147, THREATENED TO INFLICT HARM ON ON OFFICER R. BRAZIEL,
COIII, IN THAT SAID OFFENDER STATED, "I WILL KICK YOUR ASS YOU PIECE OF SHIT."
OFFENDER INGHAM WAS ORDERED BY OFFICER R. BRAZIEL TO SHOW HIS I.D. CARD AND
SAID OFFENDER REFUSED TO OBEY THE ORDER.

CHARGING OFFICER: BRAZIEL, R. COIII                    SHIFT/CARD: 1 1
                                   OFFENDER NOTIFICATION  IF APPLICABLE INTERPRETER,
TIME & DATE NOTIFIED: _10/25/99_ BY:(PRINT) _R. RAMSEY COI_
YOU WILL APPEAR BEFORE A HEARING OFFICER 24 HOURS OR MORE AFTER RECEIPT OF THIS
NOTICE. DO YOU WANT TO ATTEND THE HEARING? YES   NO   IF NO, HOW DO YOU
PLEAD? GUILTY   NOT GUILTY
OFFENDER NOTIFICATION SIGNATURE: X _Dan Ingham_        DATE: _10/25/99_
BY SIGNING BELOW, YOU GIVE UP YOUR RIGHT TO 24 HOUR NOTICE AND AUTHORIZE THE
HEARING OFFICER TO PROCEED WITH THE HEARING.
OFFENDER WAIVER SIGNATURE: _____        DATE: _____

### HEARING INFORMATION

HEARING DATE: _11/29/99_ TIME: _0950_ TAPE# _622_   SIDE# _B_ START# _454_ END# _559_
                                   TAPE# ____   SIDE# ___ START# ____ END# ____
EXPLAIN BELOW BY NUMBER: (1)IF COUNSEL SUBSTITUTE WAS NOT PRESENT DURING PART OF
HEARING, (2)IF ACCUSED OFFENDER WAS CONFINED IN PRE-HEARING DETENTION MORE THAN
72 HOURS PRIOR TO HEARING, (3) IF ACCUSED WAS EXCLUDED FROM ANY PART OF THE
EVIDENCE STAGE, (4) IF ANY WITNESSES OR (5) DOCUMENTATION WAS EXCLUDED FROM
HEARING (6) IF OFFENDER WAS DENIED CONFRONTATION AND/OR CROSS-EXAMINATION OF A
WITNESS AT THE HEARING (7) IF INTERPRETER USED:(SIGNATURE _____)
_the officer threatened to scam me, we cussed each_
_other I did not threaten him. I had to go to the_
_bathroom afterwards I gave him my I.D. card._

OFFENSE CODES: ! _09.0_ ! _24.0_ ! _____ ! _____ ! _____ !
OFFENDER PLEA: (G, NG, NONE) ! _NG_ ! _NG_ ! _____ ! _____ ! _____ !
FINDINGS:    (G, NG, DS) ! _G_ ! _G_ ! _____ ! _____ ! _____ !
REDUCED TO MINOR(PRIOR TO DOCKET) __ (DOCKET) ___ (HEARING) ___ BY:(INITIAL) __
IF GUILTY, EVIDENCE PRESENTED, CONSIDERED, AND REASON(S) FOR DETERMINATION OF
GUILT: A)ADMISSION OF GUILT, B)OFFICER'S REPORT, C)WITNESS TESTIMONY, D)OTHER
EXPLAIN IN DETAIL: _B) officers report of the entire incident attached & C) offs_
_reports. A) T/M Admission that he did not give officer I.D. card._
_D) Excluded letter to Warden C) written Documents & A) verbal conflict over_
_T/M refusal to let Produce._         ### PUNISHMENT AND

LOSS OF PRIV(DAYS) ___   REPRIMAND........     SOLITARY(DAYS)......... ___
*RECREATION(DAYS) _TC_  EXTRA DUTY(HOURS)..... ___  REMAIN LINE 3.... ___
*COMMISSARY(DAYS) _45_  CONT.VISIT SUSP THRU _/_/_  REDUC.CLASS FROM _S3_ TO _S4_
*PROPERTY(DAYS).. ___  CELL RESTR(DAYS)...... ___  GOOD TIME LOST(DAYS)... _C_
*_____(DAYS)... ___  SPECIAL CELL RESTR(DAYS)... ___  DAMAGES........$___
SPECIFIC FACTUAL REASON(S) FOR PARTICULAR PUNISHMENT IMPOSED:
_Based on officers report, attached, documentation and_
_creating a verbal testimony & failure to obey orders as listed_
_due to his statement_
CREDIT FOR PRE-HEARING DETENTION TIME? YES(DAYS) _NA_ NO / NA
DATE PLACED IN PRE-HEARING DETENTION: _NA_       HEARING LENGTH _2.35_ (MINUTES)
OFFENDER SIGNATURE FOR RECEIPT OF FINAL REPORT: _Dan Ingham_
_Capt J.C. Doyle_
HEARING OFFICER (PRINT)       WARDEN
(FORM I-47HA)CONTACT COUNSEL SUBSTITUTE TO YOU
(REV. 04.99) CONDITIONS OF CONFINEMENT

SUBMITTED BY OFFENDER

D8

## Witness Statement.

I am a witness to the below incident, that happened on Oct 14, 1999 at about 8:30 AM. I was on my way to "Diet Line Chow", when I came out of A-Pod Sally Port I heard Officer Braziel CO III "Shouting And Cussing & Threatening" inmate Dan Ingham at the 3-Building, Lobby. Inmate Ingham was standing in front of the Barber Shop.

Officer Braziel was saying how he would Body Slam & Beat Up inmate Ingham, And was calling him names like Mother Fucker, You Low Life No Good Piece of Dog Shit, Cocksucker ect. This Officer was completley out of line for cussing any inmate. I also heard inmate Ingham kept asking for some Rank, Braziel Refused to get Rank by saying. "Fuck. Getting You Rank I am The Rank."

I left the Building, And notified Lt. Rangel at A-Turn out of this confrontation going on in 3-Bldg. I learn later they had moved Ingham, And wrote him A case for "Threatening An Officer." At No Time did I hear Ingham threatening officer Brazil.

Inmate Ingham is a 68 year old man and is in no way a threat to this officer or Anyone as far as that gos. Officer Brazil is not telling the truth of this matter at all when he claimed inmate Ingham Threatened him.

End of Statement.

Norwood "Sonny" Bonner, Jr.
TDCJ-ID. #390461           E1-9

I, INMATE KEVIN SIMON 741072 WAS IN THE HALLWAY ON 3 BUILDING ON 10-24-99 APPOX. 8:30 AM WHEN INMATE DAN INGHAM WAS TRYING TO COME IN FROM THE REC. YARD TO USE THE BATHROOM. OFFICER BRAZIEL CO III LET HIM IN AND START CUSSING INMATE INGHAM CALLING HIM A "MOTHERFUCKER" "OLD PIECE OF SHIT" AND "COCKSUCKER" OFFICER BRAZIEL THREW INMATE INGHAMS I.D CARD ON THE FLOOR AND SAID HE WOULD BODY SLAM HIM TO THE FLOOR. INMATE INGHAM ASKED FOR THE BUILDING Sgt. OFFICER BRAZIEL CONTINUED TO CUSS INMATE INGHAM WHEN HE LOOKED UP AND SAW ME HE ASKED WHAT I WANTED I TOLD HIM I WAS WAITING FOR HIM TO OPEN THE DOOR SO I COULD GO GET MY MEDICATION. AT NO TIME DID I HEAR INMATE INGHAM THREATEN OFFICER BRAZIEL OR DISRESPECT HIM. INMATE INGHAM IS A VERY RESPECTFUL MAN I'VE NEVER KNOWN HIM TO BE RUDE. HOWEVER OFFICER BRAZIEL IS KNOWN FOR BEING EXPLOSIV AND RUDE INFACT HE'S HAD DIFFRENT CONFRONTATION'S WITH OTHER INMATES. **E2·10**

Kevin Simon 741072

# Statement

Date        10-24-99
Time        Aprox. 08:30
Place       3 Bldg. Lobby
Office      Braziel CO III
Inmate      INGham, Dan L. 309147

Incident: I was the SSI working 3 Bldg. Lobby, and Hallways at the time of this incident, and was A witness to the following: Inmate Ingham was trying to come in off the Rec. yard to use the Bathroom, he had asked officer Braziel if he could come in, officer Braziel Refused to let him in, Officer Braziel said "I Don't care if you Shit your Pants" When I open the Door Inmate Ingham asked him his name, Because Officer Braziel was not wearing a name Tag, officer Braziel went Ballistic on inmate Ingham, And Started Cursing him, tell him how he would Body Slam him into the floor, officer Braziel was cussing ~~him~~. And yelling at the Top of his voice, he called Inmate Ingham A "Motherfucher" Inmate Ingham's Response was "If you had of kept your Mother at home, I wouldn't have been a Mother fucker" Officer Braziel totally lost it, he threatened to beat Ingham up, Inmate Ingham told him he was going to write to the Warden and Report this, officer Braziel said "fuck the Warden, he Ain't running this", Eventually Lt. Rangel was called down, he hand cuffed Inmate Ingham, talked to officer Braziel in private, he then came over took the cuffs off inmate Ingham talked to him, Then told inmate Ingham ~~to~~ to go Pick your things your going to be moved to 7 Bldg., And that's all I seen or heard of the incident.

Witness Signature **E3-11**

Inmate :        Christopher Whitfair #847538

I XAVIER GARCIA T.O.C.J.I.D No. 553598 am A witness To the incident involving officer Beaziel, And Inmate INGHAM, in Three Building Lobby @ 08:30 on Oct. 24, 1999.

I was Coming off C-Section to Go to Diet Line chow, while waiting in the Sally Port, I heard, And Could See officer Beaziel threatening, And Cussing inmate INGHAM.

Officer Beaziel threatened to Body Slam, and Beat inmate INGHAM up. Inmate Ingham was Requesting "RANK", officer Beaziel yelled, "Cock Sucker, I am the only Rank you'll see". As I was Leaving The Bldg. inmate Ingham asked me to Notify the Rank, who would be in Front of Three Chow hall.

When I Got to Three Chow hall, I told Lt. Rangle About the Confrontation Going on in 3 Bldg.

At No Time Did I hear inmate Ingham make Any Jesture or threat Towards officer Beaziel


XAVIER GARCIA
No. 553598


E4-12

CutePDF - www.tessica.com

Rec. -2-00

# STEP 1
**PASO 1**

**Texas Department of Criminal Justice**

**OFFENDER GRIEVANCE FORM**
Forma Para Quejas de los Preso

| OFFICE USE ONLY |
| Para Uso De La Oficiana Solamente |

Grievance #: _2000104679_
Date Received: _4-26-00_
Date Due: _6-5-00_
Grievance Code: _423_
Investigator Number: _____

☐ EM   ☐ UOF   ☐ MED
☐ ADA   ☐ REL   ☐ SSI

der Name: _INGHAM, DAN_          TDCJ # _309147_

_Allred_          Housing Assignment: _____

where incident occurred: _Allred Unit_   (_3B30_)

must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when ling the results of a disciplinary hearing.

did you talk to (name, title)? _Captain Boyle, the Disciplinary Officer_ when? _11/09/99_

was their response? _Denied me due process; said to appeal._

action was taken? _None_

your grievance in the space provided. Please state who, what, when, where and disciplinary case number if appropriate.

This grievance is an appeal on the procedures used against me in Disciplinary Case Number 200000063928, i.e. sing the regular telephone when the speaker phone went out while questioning the charging officer; thereby enying me the right to confront and cross-examine my accuser and to know what he said to the DHO.

On 10/24/99 I was falsely accused by Officer Braziel, R. CO III of refusing to obey an order and threatning n officer after I was denied entrance from the 3-Building rec yard to my cell to use the toilet. When I asked is name the officer threatened me with bodily injury and cussed me. This young man has a bad reputation among nmates for threatening and abusing prisoners. I am 68 years old and disabled and only wanted to use the toilet.

At the hearing on 11/09/99, at 09:50 hrs, Tape #622, Side# B, Start# 454, End# 559, the speaker phone misunctioned and did not operate. The charging officer was not present. The regular telephone was used by Captain Boyle, the DHO. The DHO did not record the charging officer's statements into the recorder, and there were no xtreme circumstances justifying his absence or unavailability. This grievance charges that (1) the charging officer was unavailable; (2) the speaker phone did not work (the charging officer is not on the tape and I do not know what he said); (3) I have no assurance the correct officer or that any officer was actually on the phone; (4) I was precluded from cross-examining the officer; (5) the procedure used against me on 11/09/99 violated TDCJ's policies and procedures.

Section VI.B.6, at Page 5 of the Disciplinary Rules (GR-106 rev. 1998) states that: "The offender or his counsel substitute may question all witnesses who appear at the hearing or are interviewed over the telephone. The disciplinary hearing officer will ask the accused or his/her counsel substitute, whether he/she has any questions of the witnesses . . . . Questioning of an officer shall be conducted by the counsel substitute or, after the accused offender has indicated the question he/she wishes to have asked, by the disciplinary hearing officer.

Any witness, including the charging officer, who is unable to attend the hearing may be interviewed by telephone and the answers to the witness must be repeated into the tape recorder if the speakerphone is not used. The unavailability of the charging officer's testimony by telephone or physical presence must be limited to those occasions when extreme circumstances arise."

**CONTINUED ON BACK**

**SUBMITTED BY OFFENDER**   F1-13

127 Front (9/1/1999)          PLEASE SIGN ON BACK (OVER)



*Recein 1 Back 1-27-GU*

**Texas Department of Criminal Justice**

# STEP 1
## PASO 1

## OFFENDER GRIEVANCE FORM
Forma Para Quejas de los Preso

**OFFICE USE ONLY**
Para Uso De La Oficiana Solamente

Grievance #: _20000.599 25_
Date Received: _JAN 2 0 2000_
Date Due: _2-29-00_
Grievance Code: _903, 404_
Investigator Number: _TORI4_

☐ EM    ☐ UOF    ☐ MED
☐ ADA   ☐ REL    ☐ SSI

Offender Name: _INGHAM, DAN L_     TDCJ # _309147_

Unit: _ALLRED_     Housing Assignment: _7H 25 B_

Unit where incident occurred: _ALLRED_

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? _Grievance Coordinator_     When? _1-12-00_

What was their response? _He didn't have an answer, said he would check_

What action was taken? _None_

State your grievance in the space provided. Please state who, what, when, where and disciplinary case number if appropriate.

_On Nov. 19th 1999 I Filed A Grievance on the Procedure used in my Disciplinary Hearing held on Nov. 9, 1999. My Grievance was never Returned to me, I inquired to the Grievance office, They say "Computer indicates you have No Outstanding Grievances, all your Grievances have been Returned": This is not True, The Step #1 I Filed on Nov. 19th has never been Returned to me. I wrote to the Grievance officer again on or about the 12th of Jan. asking for a Print out concerning the Grievances he alleged that were Sent Back. I Need to Know the date of the latest Grievance, The Contents of the issue, The Number, What was being Grieved, and the outcome of that Grievance. I have written to Warden Woods, asking his help, But! he has never answered my I-60, and Neither has the Grievance office answered my inquiry of late. My original Grievance was about the Trial officer (Capt. Boyle) using a Speaker Phone, and my accuser was not Present at the Trial, Supposedly he was on the Phone. The Speaker Phone went out of order, only the Phone Part was Working, I Could Not hear, Nor is it on tape, what my accuser said, I had no way to Cross examine, and don't even know for certain that The Person on the Phone was in Fact the accuser. This delay in not Receiving my original Grievance Back has Stopped me From Filing my Step #2, it is also denying me access to the Courts. The Grievance office is Responsible for Getting my Grievance Back to me when They have Completed the Step #1._

---

**FIA-14**

_File_

I-127 Front (9/1/1999)        PLEASE SIGN ON BACK        **SUBMITTED BY OFFENDER**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Executive Division

### *Inter-Office Communication*

**DATE:**　　May 23, 2000

**TO:**　　Ingham, Dan 309147
　　　　　　**Allred 069**

**FROM:**　　Susan L. Schumacher
　　　　　　Assistant Administrator, Offender Grievance

**SUBJECT:**　　Attached Correspondence
　　　　　　CGO # 2130

The purpose of this correspondence is to acknowledge receipt of your I-60 Request dated May 12, 2000. Records indicate that the case you received on October 24, 1999 (#2000063928) was reviewed at the unit level in grievance #20000104679, and was closed May 11, 2000.

JS/np
cc:　　File

F2-15

IV. L ··· Cr GRIEVANCE 3, ··· 99, Huntsville, Tx

**SUBJECT:** *State briefly the problem on w...ch you desire assistance.*    DATE: 5/12/2000

Sir: I Forwarded The Paper Work on A Case I Received on 10-29-99.
I had sent IT To Wayne Scott and his office Said To Send iT To You.
As The Paper work Reflects, I was Not Given a Fair Hearing, I had Four
Witness Statements To the Sub Counsel That Stated "I Did Not Threaten This officer"
During my hearing Capt. Boyle Used A "Speaker Phone" To Question officer
Braziel, The Speaker Went out, Capt Boyle Talked one on one, To The Suspased
officer Braziel. I had no Chance To Face my acuser, or To Cross
examine him. This officer is Known for Lying on immates To Put Cases on
Them as was my Case. I would like To Know what disposition has
been Taken? and Would like All my Paper work Back A.S.A.P. - Respectfully,

Name: INGHAM, DAN L _____ No: 309147 _____ Unit: ALLRED
Living Quarters: 3B 30B _____ Work Assignment: G.S. # 41 (MED.)

**DISPOSITION:** (Inmate will not write in this space)

CGO# 2130

MAY 16 2000    F3-16

I-60 (Rev. 11-90)    J0271

**SUBJECT:** State briefly the problem on which you desire assistance.

TO : UGC
1-11-2000

Sir: I Filed a Grievence on November 19th or there abouts. it was a Step one Filed against the Major case I Received & was Tried for. on November. 9th. (Threatening an officer) My Accuser, officer Braziel was Not Present at the hearing. Capt. Boyle Brought in a Speaker-Phone he called Someone who Said he was Braziel, the Speaker Part of the Phone Went out, And Capt. Boyle Talked to Someone on The other end. Weather it was Braziel or who ever, They are not on The Trial Tape. My Grievence was Based on The FACT That I was denied ACCES To Face My Accuser, And could ● NOT Cross examine him. Being that this case is a Loss of Liberty, interest, I am Allowed By law To Face

Name: INGHAM, DAN                    No: 309147.                Unit: J.A.

Living Quarters: 7 H 25 B          Work Assignment: G.S. 41 (M/Fs)

c/File

**DISPOSITION:** (Inmate will not write in this space)

THE COMPUTER Shows THAT you Never Filed A Grievence in November 1999 for your Alleged incident. No code 400 Thru 423 Filed.

UGC
1-18-2000

Pg 1 of 2

I-60 (Rev. 11-90)

F3-17

SUBMITTED BY OFFENDER

**SUBJECT:** State briefly the problem on which you desire assistance.

To Uge
(1-11-2000)

2

My ACCUSER, And Be Able To Cross examine him. My Sub-Counsel has at least Three Witness's that Say "I Did Not Threaten Braziel" in Fact! it was Braziel Who was Threatening to "Body Slam" me. At any Rate, The Grievance officer don't Seem To Know where my Grievance Went?, I Did Not Receive it back. its been over The 45 day limit Since I Filed. Now it Seems That its been Conveniently Lost. I need your help to Find out what happened to it. I Can Not File my Step 2 without it, And this is Denying me Access To The Courts. Please Respond To This I-60; its important To my Freedom

Name: INGHAM, DAN          No: 309147          Unit: ALLRED

Living Quarters: 7H 25B     Work Assignment: G.S. 41 (med)

cc/file

**DISPOSITION:** (Inmate will not write in this space)

See page 1 for Answer.

I-60 (Rev. 11-90)                                          PG 2 of 2

F3-18
SUBMITTED BY OFFENDER

1-27-00

Dear Warden Woods;

Here is the Copy of the Grievance I filed on 11-19-99 that the Grievance officer says I didn't file.

Please Review this Sir, I need some type of answer to proceed with the Step #2, Sir. I need to know What the Grievance officer's Response was to this grievance.

Your help will Be Greatly appriciated.

Sincerely Yours,

Dan. Ingham
309147

SUBMITTED BY OFFENDER

G-19

**FR:**   Dan L. Ingham #309147
Allred Unit
2101 FM 369 North
Iowa Park, Texas 76367

**TO:**   Mr. Wayne Scott, Executive Director
Texas Department of Criminal Justice,
P.O. Box 99
Huntsville, Texas 77342

**DATE:** February 21, 2000

**RE:**   Grievance-Wrongful Disciplinary Charge

Dear Mr. Scott:

I am a 68 year old white male and was within 5 months of my discharge date under the 65th Legislation when I was given a major disciplinary charge by a CO III who said that I threatened him after he refused to let me into the building from the rec yard so I could use the bathroom. This officer has a long history among inmates and officers for his abuse. He was not present at the disciplinary hearing, so the DHO used the speakerphone. But the speakerphone went dead and I could not hear anything the officer said. His words were not repeated into the recorder by the DHO as required. After almost two months I learned that my grievance on the issue was lost by the Unit Grievance Coordinator. I was denied permission from the Warden to file an extension or to resubmit, and I filed a second grievance. The second grievance was denied. (See attached copies of both grievances and I-60's). So far, every issue has been avoided at every turn. I was five (5) months from going home after spending 19 years in here. And it was all lost because of this young guard; and my grievances are being ignored or the entire issue. Please, I need your help. I am asking you to look into this matter. Please do not tell me to go back through Step-2. The grievance has already shown it doesn't work in this case. This is a serious situation that needs your attention and help. I am not a trouble-maker. I have had a clean record for over fifteen years. I am an old man and I simply want my grievance heard and I want to go home. Please, if you will, look into this matter and help me if you can. I await your response as time and opportunity permit.

Sincerely Yours,

Dan Ingham 2/25/00

Dan Ingham #309147

SUBMITTED BY OFFENDER
H-20

DATE: 10-24-99

TIME: 08:10

LOCATION: 3 BLDG. REC. YARD & LOBBY

OFFICER'S: BRAZIEL, CO111-DeVORE, CO111-OFFICER ON 3-4-GATE

INMATE: INGHAM, DAN L. ##309147

## STATEMANT

I WAS ON 3 BLDG. REC. YARD ON THE ABOVE DATE, AND TIME.
I ASKED OFFICER BRAZIEL, WHO WAS ON 3BLDG. DESK, IF HE COULD
LET ME IN THE BLDG., BECAUSE I HAD TO USE THE BATHROOM TO
DEFECATE. HE REFUSED TO LET ME IN, I ALMOST BEGGED HIM TO
LET ME IN TO USE THE BATHROOM. HIS RESPONCE WAS "I DONT CARE
IF YOU SHIT YOUR PANTS I AM NOT LETTING YOU IN".
I THEN GO TO THE OUTSIDE GUARD SHACK, AND ASK OFFICER DeVORE
IF HE COULD CONTACT SOME RANK? I EXPLAINED MY PROBLEM TO THIS
OFFICER, HE SAID THAT HE COULDNT HELP ME BECAUSE HE DIDNOT
HAVE A RADIO OR TELEPHONE. I THEN PROCEEDED TO WHERE 3-4 GATE
GUARD POST WAS AT, AND ASKED THE OFFICER THERE IF HE WOULD CALL
THE SGT. OR SOME RANK, TO HELP ME GET INTO THE BATHROOM, AGAIN,
I GOT NO HELP. I THEN RETURNED TO THE ACCESS DOOR TO THE REC.
YARD, AND WAITED TILL OFFICER BRAZIEL FINEALLY OPENED THE DOOR
TO CALL US ALL INTO THE BLDG. THIS OFFICER DID NOT HAVE ON HIS
NAME TAG. I DID NOT KNOW HIS NAME, I ASKED HIM FOR HIS NAME, AND
HE QUESTIONED WHY I WANTED HIS NAME?, I TOLD  HIM I WAS GOING TO
WRITE TO THE WARDEN ABOUT THIS INCINDENT, HE EXPLODED, AND GOT
INTO MY FACE(JOHN WAYNE STYLE) AND TOLD ME HOW HE WAS GOING TO
BODY SLAM ME INTO THE FLOOR. HE ALSO STATED THAT "FUCK THE
WARDEN, HE AINT RUNNING THIS". OFFICER BRAZIEL CONTINUED TO

(p1)

I·21

CibPDF - www.fenito.com

HARANGUE, AND CUSS ME, CALLING ME A "MOTHER FUCKER", I TOLD
HIM THAT I WOULDNT HAVE BEEN ONE IF HE HAD KEPT HIS MOTHER
AT HOME & OFF THE STREETS. HE WENT BALLISTIC, AND TOLD ME
HOW HE WAS GOING TO BEAT ME UP. I TOLD HIM HE WOULD REALLY
BE SORRY IF HE EVER PUT HIS HANDS ON ME. ABOUT THIS TIME,
OFFICER DeVORE CAME INTO THE BLDG. FROM THE REC. YARD. I WAS
STANDING IN FRONT OF THE BARBER SHOP, OFFICER BRAZIEL WAS
BEHIND THE DESK, AT THIS TIME, OFFICER DeVORE TOLD ME TO SHUT
UP, AND FACE THE WALL, WHICH I DID. I KEPT ASKING FOR SOME
RANK, OFFICER BRAZIEL REFUSED TO CALL ANY RANK. ALSO AT THIS
TIME, OTHER INMATES STARTED GOING TO DIET LINE CHOW, I ASKED
SOME OF THEM TO GET HOLD OF SOME RANK WHILE UP TOWARDS THE
CHOW HALL. FINEALLY! LT. RANGLE SHOWED UP. HAD ME PUT MY
HANDS BEHIND ME, AND HE PUT THE HANDCUFFS ON ME. HE THEN TOOK
OFFICER BRAZIEL OFF DOWN THE HALL TO TALK TO HIM, EVEN THEN I
COULD HEAR OFFICER BRAZIEL STILL THREATENING TO DO BODLY HARM
TO ME. LT. RANGLE RETURNED, TOOK THE CUFFS OFF ME, TOOK ME DOWN
THE HALL WAY, AND ASKED WHAT WAS GOING ON? I TOLD HIM, HE THEN
WENT BACK TO THE DESK, MADE A TELEPHONE CALL, WHILE ON THE PHONE,
HE ASKED ME MY MEDICAL CLASS, AND MY AGE. I TOLD HIM I WAS 4th
CLASS MEDICAL AND THAT I WAS SIXTY EIGHT YEARS OLD.
AFTER LT. RANGLE TALKED TO WHO EVER IT WAS HE TALKED TO, HE
TOLD ME TO GO PACK ALL MY THINGS. HE WAS GOING TO MOVE ME TO
SEVEN BLDG. WITHIN THE HOUR I WAS MOVED TO THE "B" SIDE OF THE
FARM, I COULD NOT GET WITNESS STATEMENTS FOR MY DEFENCE
CONCERNING THIS INCINDENT.

DAN L. INGRAM 309147
(p2)

I-22

OFFICIAL NOTICE FROM COURT OF CRIMINAL APPEALS OF TEXAS
P.O BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711

RE: Writ No. 17,531-03
STYLE: Dan Lee Ingham
TRIAL CT NO: 80-CR-123-C
November 15, 2000

    This is to advise that the Court has denied without
written order the application for writ of habeas corpus.

**3B·30**

Troy C. Bennett, Jr., Clerk

DAN LEE INGHAM  TDC# 309147
069  ALLRED UNIT
2101 FM 369 NORTH
IOWA PARK  TX  76367-5636

11/21/00

Appendix - B

to Federal Petition