5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 4 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| DAN L. INGHAM, § | |
| Petitioner, § | |
| § | |
| v. § | CIVIL ACTION NO. B-00-042[1] |
| § | |
| GARY L. JOHNSON, DIRECTOR, § | B-1-01 |
| TEXAS DEPARTMENT OF CRIMINAL § | |
| JUSTICE, INSTITUTIONAL DIVISION, § | |
| Respondent. § | |

**RESPONDENT JOHNSON'S MOTION FOR SUMMARY JUDGMENT
WITH BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Gary L. Johnson, Director, Institutional Division, Texas Department of Criminal Justice ("TDCJ-ID"), Respondent, ("the Director"), by and through his attorney, the Attorney General of Texas, and files this his Motion for Summary Judgment with Brief in Support.

**I.**

**JURISDICTION**

This court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 2241, 2254.

**II.**

**DENIAL**

The Director denies every allegation of fact made by Petitioner ("Ingham"), except those supported by the record and those specifically admitted herein.

**III.**

**STATEMENT OF THE CASE**

The director has lawful custody of Ingham pursuant to judgments and sentences of the 197th

---

[1] The Director previously inadvertently filed a motion for extension under another cause number, B-99-206, that was intended for this case.

District Court of Cameron County, Texas, in cause numbers 80-CR-123-C and 80-CR-124-C, styled *The State of Texas v. Daniel Lee Ingham. Ex parte Ingham*, Application No, 17,531-01, at 49-58. Ingham was charged with the felony offense of murder in each cause. He entered pleas of not guilty and was tried by a jury, which found him guilty of murder and assessed punishment of imprisonment for life in number 80-CR-123-C, and found him guilty of voluntary manslaughter and assessed punishment of imprisonment for eighteen years in number 80-CR-124-C.

Ingham has filed three state applications for writ of habeas corpus challenging these convictions. The Court of Criminal Appeals denied them without written order on November 18, 1987, and June 19, 1996. *Ex parte Ingham*, Nos. 17,531-01, -02, at covers. Ingham filed a third state writ application on September 1, 2000, which was denied without written order on November 15, 2000.

A procedural history of any appeals or state writ applications is not necessary for disposition of the instant case because the validity of Ingham's holding conviction is not directly in issue; rather, Ingham challenges a prison disciplinary hearing. In disciplinary case number 2000083928, Ingham was found to be guilty of threatening a corrections officer and failing to show an identification card. Fed. Writ Pet. Exhibit D-8. On October 25, 1999, Ingham was notified of the charged offenses and his rights by counsel substitute. *Id.* As a result of this disciplinary hearing on November 11, 1999, Ingham lost forty-five days of recreation and commissary, and received a reduction in line class from S3 to S4. On January 20, 2000, Ingham's step one grievance appealing the disciplinary proceeding was received by the unit grievance investigator. *Id.* On January 26, 2000, Ingham's step one grievance was denied. *Id.* Thereafter, on April 26, 2000, Ingham's step two grievance was received by the unit grievance investigator. *Id.* On May 11, 2000, Ingham's step two grievance was denied. *Id.*

## IV.

## STATE COURT RECORDS

Records of Ingham's state habeas proceedings are available and will be forwarded to this court as soon as they have been copied.

## V.

## PETITIONER'S ALLEGATIONS

The Director understands Ingham's allegations to be as follows:

1. He was denied due process by the retroactive application of the new mandatory supervision laws to him in violation of federal and state *ex post facto* laws and the state and federal constitutions; and

2. He was denied due process and a fair hearing when he was denied the right to confront and cross-examine his accuser during the disciplinary hearing, in violation of the state and federal constitutions.

## VI.

## EXHAUSTION OF STATE REMEDIES

The director believes that Ingham has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b)(1) with regard to the issues briefed in this motion; therefore, the director does not move for dismissal for failure to exhaust.

## VII.

## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A party moving for summary judgment bears the burden of informing the court of the basis for its motion and identifying pleadings and other record evidence that demonstrate the absence of any genuine issues of material fact. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 191 (5th Cir. 1990), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). If the moving party makes the required showing, then the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Fields v. City of South Houston*, 922 F.2d 1183, 1187

3

(5th Cir. 1991). Here, the record developed in the state courts shows that the Director is entitled to judgment as a matter of law.

In addition, Ingham is required to make one of two showings under the AEDPA:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2000). He has made neither.

In *Williams v. Taylor*, 120 S. Ct.1495 (2000), with regard to 2254(d)(1), the Supreme Court held that the "clearly established" requirement referred to the *Teague v. Lane*[2] bar on new rules of constitutional criminal law. *Id.*, 120 S. Ct. at 1505-1506. In fact the Court stated "[i]t is perfectly clear that AEDPA codifies Teague to the extent that Teague requires federal habeas courts to deny relief that is contingent upon a rule of law not clearly established at the time the state conviction became final." *Id.* at 1506. The Court went on to hold that the section (d)(1) restricts the source of clearly established law to this Court's holdings." *Id.* at 1507.

The Fifth Circuit has recently interpreted *Williams*, as follows:

> Before enactment of the AEDPA, a "federal court entertaining a state prisoner's application for habeas relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal habeas court owed no deference to a state court's resolution of such questions of law or mixed questions."

---

[2] *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989).

4

Embodying the principles of federalism, comity and finality of judgments, AEDPA substantially restricts the scope of federal review of state criminal court proceedings. As before, a habeas petitioner has the burden under AEDPA to prove that he is entitled to relief. In addition, however, AEDPA directs that

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

Thus, federal courts may not grant the writ merely on a finding of error by a state court, but only if a state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts," Williams, 120 S.Ct. at 1523 . . .

Absent such a direct conflict with the Supreme Court, the writ is available only if the state court "unreasonably applies [clearly established federal law, as determined by the Supreme Court] to the facts of the prisoner's case," id., or makes "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The standard is one of objective reasonableness.

*Montoya v. Johnson*, 226 F.3d 399, 403-404 (5th Cir. 2000).

**B.  To the extent Ingham challenges the 45 day loss of commissary and recreation privileges and reduction in line class, he has failed to demonstrate an actionable constitutional deprivation.**

As a result of disciplinary case number 2000063928, Ingham lost 45 days of commissary and recreation privileges and suffered a reduction in line class. To the extent Ingham challenges these deprivations, he has failed to demonstrate an actionable constitutional deprivation. The Due Process Clause is not implicated by this change in the conditions of Ingham's confinement; therefore, he has not stated a claim that is entitled to federal habeas corpus relief.

5

"[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S. Ct. 2293, 2297 (1995). When a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Sandin*, 515 U.S. at 485, 115 S. Ct. at 2301; *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974 (1974); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). However, prisoners do not lose all constitutional rights when they are incarcerated. *Madison*, 104 F.3d at 767. In certain circumstances, states may create liberty interests which are protected by the Due Process Clause. *Sandin*, 515 U.S. at 483-84, 115 S. Ct. at 2300; *Madison*, 104 F.3d at 767. "[T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300. "[T]hese interests are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison*, 104 F.3d at 767.

Ingham's temporary loss of privileges does not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *Madison*, 104 F. 3d at 768. Rather, they constitute a change in the conditions of Ingham's confinement and, therefore, do not implicate the protections afforded by the Due Process Clause. *See Id.* at 768 (thirty day commissary restriction and cell restrictions do not implicate due process concerns); *see also Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301 (holding no liberty interest was implicated by placement in administrative segregation). Therefore, Ingham has not stated claims which entitle him to federal habeas relief.

Ingham's custodial classification in terms of a "line class" will not "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487, 115 S. Ct. at 2302. The possibility Ingham's custody classification would affect when he was ultimately released from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487, 115 S. Ct. at 2302). Ingham has not shown the hearing officer's determination his line class be

6

reduced "would automatically shorten his sentence or lead to his immediate release." *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997). Moreover, the timing of Ingham's release is "too speculative to afford him a constitutionally cognizable claim to the 'right' to a particular time earning status." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000). Therefore, Ingham has not stated a claim entitled to federal habeas corpus relief.

### C. Ingham is not eligible for mandatory supervision.

The date Ingham committed these offenses was March 20, 1980. Exhibit A. Ingham is not eligible for mandatory supervision. *See* Exhibit A and TEX. CODE CRIM. PROC. ANN. art. 42.12 § 15(c) (Vernon 1983). Therefore, to the extent Ingham challenges his denial of mandatory supervision or any *ex post facto* application of the mandatory supervision laws, he is not entitled to relief.

## VIII.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Director respectfully requests this court to grant summary judgment and dismiss the instant action, with prejudice.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

MICHAEL MCCAUL
Deputy Attorney General for
Criminal Justice

S. MICHAEL BOZARTH
Assistant Attorney General
Chief, Habeas Corpus Division

7

                                              KARYL KRUG*  
\*Lead Counsel                  Assistant Attorney General  
                                              Habeas Corpus Division  
                                              State Bar No. 00786033

                                              P.O. Box 12548, Capitol Station  
                                              Austin, Texas 78711-2548  
                                              (512) 936-1400  
                                              (512) 936-1280 (Fax)  
                                              ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

     I, Karyl Krug, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing Respondent's Answer With Brief In Support has been served by placing same in the United States Mail, postage prepaid, on this the 10th day of April, 2001, addressed to: Dan L. Ingham, TDCJ-ID# 741432, Estelle Unit, 264 FM 3478, Huntsville, Texas 77320.

                                              KARYL KRUG  
                                              Assistant Attorney General

# Exhibit A

ClibPDF - www.fastio.com

# AFFIDAVIT

THE STATE OF TEXAS §
COUNTY OF WALKER §

BEFORE ME, the undersigned authority, on this day personally appeared **CHARLEY VALDEZ**, who, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed:

"My name is **CHARLEY VALDEZ**. I am over twenty-one years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am employed as Administrative Assistant to the State Classification Committee for the Texas Department of Criminal Justice - Institutional Division, and attached are **Dan Lee Ingham, TDCJ-ID # 309147** are true and correct copies of the original records now on file in my office within the Bureau of Classification and Records of the Texas Department of Criminal Justice - Institutional Division.

In witness whereof, I have hereto set my hand this the 1st day of February, 2001."

_____
CHARLEY VALDEZ,
Administrative Assistant to the,
State Classification Committee

SWORN TO AND SUBSCRIBED BEFORE ME, by the said **CHARLEY VALDEZ** on this 1st day of February, 2001, to certify which witnesses my hand and seal of office.

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



TEXAS DEPARTMENT OF CRIMINAL JUSTICE

P. O. Box 99, Huntsville, Texas 77342-0099

Wayne Scott
Executive Director

February 1, 2001

Office of the Attorney General
Mr. Jeff Brinkman, Investigator
Habeas Corpus Division
P.O. Box 12548
Austin, Texas 78711

**RE: Dan Lee Ingham TDCJ-ID# 309147**

Mr. Brinkman:

The files of this Agency have been reviewed in regard to inmate Dan Lee Ingham, TDCJ-ID # 309147, pursuant to your request.

The inmate was admitted to custody 9-5-80, with credit allowed from 3-26-80 on an 18-year and a Life sentence from Cameron County charged with Voluntary Manslaughter with a Deadly Weapon and Murder with a Deadly Weapon. By the 197th, District Court under cause # 80CR124C and #80CR123C. The inmate is charged for offenses occurring 3-20-80, with sentencing on 8-7-80. The offenses are identified as not eligible for mandatory supervision release by statute and are subject to flat calculated parole eligibility status.

The inmate currently remains in custody with no release date and a parole eligibility review date of 11-1-01.

Sincerely,

*[signature: Charley Valdez]*

CHARLEY VALDEZ
Administrative Assistant
To The State Classification Committee
(936) 437-8748

CV/dw
cc: file

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *DAN L. INGHAM,* | § | |
| Petitioner, | § | |
| | § | |
| *v.* | § | CIVIL ACTION NO. B-00-042 |
| | § | |
| *GARY L. JOHNSON, DIRECTOR,* | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, INSTITUTIONAL DIVISION,* | § | |
| Respondent. | § | |

## ORDER

Be it remembered that on this day came to be considered Respondent Johnson's Motion for Summary Judgment, and the Court after considered the pleadings of the parties filed herein, is of the opinion that the following order should issue:

It is hereby ORDERED, ADJUDGED and DECREED that said Motion be, and it is hereby GRANTED.

SIGNED on this the _____ day of _____, 2001.

_____
JUDGE PRESIDING