United States District Court
Southern District of Texas
FILED

JUL 1 9 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DAN L. IGHAM,             §
      Petitioner,         §
                          §
v.                        §           CIVIL ACTION NO. B-01-001
                          §
GARY L. JOHNSON, DIRECTOR, §
TEXAS DEPARTMENT OF CRIMINAL §
JUSTICE, INSTITUTIONAL DIVISION §
      Respondent.         §

PETITIONER'S PRO SE MOTION FOR NEW TRIAL,
AND TO ALTER OR AMEND JUDGMENT
Rules 59(a) and (e) Fed.R.Civ.Pro.

TO THE HONORABLE JUDGE OF THE SAID COURT:

COMES NOW Dan I. Ingham, Pro Se, and moves this Court
pursuant to Rule 59(a), Federal Rules of Civil Procedure, to
grant him a new trial, or to alter or amend the Court's judgment
pursuant to Rule 59(e), supra.  In support, Petitioner would show
the following:

I.

HISTORY

1.  This is a federal habeas corpus proceeding brought by a
state confined prisoner pursuant to 28 U.S.C. § 2254, et seq..

2.  On June 28, 2001, this Court granted summary judgment to
the Respondent.

3.  The Court's order was entered on the docket July 2,
2001.

4.  Petitioner received a copy of that order via U.S. M
through prison authorities on July 6, 2001.

5.  The Petitioner is timely before this Court. S
Spotville v. Cain, 149 F.3d 374 (5th Cir. 1998).

Page 1.

2

II.

The motion for new trial and to alter or amend the judgment
is the appropriate vehicle under Rule 59 to seek reargument of
dispositive motions such as summary judgment.  Toops
v. U.S. Fidelity & Guar. Co., 871 F.Supp. 284, 293-294 (S.D.Tex.
1994).

III.

GROUNDS FOR GRANTING NEW TRIAL

1. The verdict is against the weight of the evidence

2. The verdict is in error: intervening change in law

3. Improper conduct by opposing counsel: no service of
   opposing counsel's motion for summary judgment

4. Necessity to prevent a manifest injustice: entitlement
   to mandatory supervision.

IV.

ARGUMENTS & AUTHORITIES

The District Court may grant a new trial for any reason for
which new trials have been previously granted, such as where the
verdict is against the weight of the evidence or is inadequate,
or where conduct by counsel improperly influenced the
deliberative process, or where it is necessary to prevent a
miscarriage of justice.  Granting of a new trial is in the
discretion of the district judge.  Allied Chem. Corp. v. Daiflon,
Inc., 449 U.S. 33, 101 S.Ct. 188 (1980).

A motion for new trial should be granted where the verdict
is against the weight of the evidence and it is necessary to
prevent a miscarriage of justice.  See Greenleaf v. Garlock,

Inc., 174 F.3d 352, 365-66 (3rd Cir. 1999). Moreover, a new trial should be granted where there has been an "erroneous result," Piesco v. Koch, 12 F.3d 332 (2nd Cir. 1993), or where the verdict is against the "clear" weight of the evidence, Scaggs v. Consolidated Rail Corp., 6 F.3d 1290 (7th Cir. 1993), or where the verdict is against the "great" weight of the evidence. See Winter v. Brenner Tank, Inc., 926 F.2s 468 (5th Cir. 1991). In this case, it is undisputed that:

a) the Petitioner remains in prison after serving more than 20 flat calendar years on a Life sentence;

b) he was sentenced under the laws of the Texas 65th Legislation, known among legal circles as the "1/3rd Law";

c) the law at the time of his sentence was that mandatory supervision applied to his offense and sentence;

d) the mandatory supervision laws have changed numerous times since his sentencing, the latest and most significant changes being in 1996;

e) Life sentences in Texas are based on 60 year periods for mandatory supervision purposes;

f) he did not and could not confront and cross examine his accusor during a prison disciplinary proceeding;

g) the Respondent did not serve the Petitoner with a copy of the Respondent's motion for summary judgment;

h) the Respondent did not file a motion for extension of time with the trial court;

i) the Respondent's motion for summary judgment was 60 days late of the trial court's initial show cause order; and,

j) the Petitioner has not been provided the fair and reasonable opportunity to review and respond to the Respondent's motion for summary judgment or to defend himself against the said motion. Since the Petitioner has not received or reviewed the Respondent's motion, he does not know what its claims are and he does not know what, if any, exhibits or affidavits are attached to the said motion.

4

Without waiving his right to plead further, the Petitioner cannot at this time respond to anything the Respondent claims against the issue of the Petitioner being deprived of the right of confrontation and cross-examination during the prison disciplinary proceeding.  Petitioner reserves the right to plead further thereon.

Among the fact issues in dispute which are material to this case, and which the Petitioner is aware of only because of the reading of the Court's order granting summary judgment to the Respondent, is that the Respondent claims the Petitioner is not eligible for mandatory supervision.  This is assumed from the wording of the July 2, 2001, order granting the Respondent's motion for summary judgment.  Again, the Petitioner has never received a copy of the Respondent's motion for summary judgment, so he is forced to limit his following argument to a blind battle.

That one disputed fact issue, however, is so material to the fair resolution of the habeas claims that it precludes summary judgment as a matter of law. Rule 56(c), Fed.R.Civl.Pro..  That is, if the Petitioner is entitled to mandatory supervision then the writ should be granted and him ordered released to mandatory supervision.  The main issue in dispute then is whether he is entitled to mandatory supervision according to Texas law, and whether he has a valid liberty interest in release to mandatory supervision.  According to the law in effect at the time of his offense and sentence he is entitled to mandatory supervision. And, according to Fifth Circuit decisions and even new State law, a prisoner has a liberty interest in mandatory supervision.

5

The Texas Court Of Criminal Appeals has recently ruled that
Texas prisoner's do have a created "liberty interest" in
mandatory supervision release dates. See **Ex Parte Geiken**, 28
S.W.3d 553 (Tex.Cr.App. 2000) (incorporated herein by reference).

At least one other federal court in Texas and one other
State court have previously ruled that Texas prisoners are
entitled to mandatory supervision under the law in effect at the
time of their offense.   **Appendix's** B & C attached.

In the present petition, Dan Ingham contends that he has
been denied his release on mandatory supervision as required by
former Article 42.12, §15(b) and (c), Texas Code of Criminal
Procedure, effective August 29, 1977, since recodified as §§
508.145-508.149, Texas Government Code.   The denial violates the
due process of law and ex post facto provisions under the 5th and
14th Amendments and Article I, sect. 9, cl. 3  and sect. 10,
cl. 1 of the United States Constitution, and Article I, section
10, 16 and 19 of the Texas Constitution.

Moreover, the Petitioner was denied the constitutional right
of confrontation and cross-examination and due process in a major
prison disciplinary proceeding when he was wrongfully denied the
right to confront, question and cross-examine his accusor.

With respect to the mandatory supervision issue, the
Petitioner has continued to rely on former Article 42.12 § 15(b)
and (c), Tex. Code Crim.Pro..   Those subsections state in
relevant part as follows:

> (b) "...If a prisoner is serving a sentence for the offenses
> listed in Section 3f(a)(1) of this Article or if the
> judgment contains an affirmative finding under Section
> 3f(a) of this Article, he is not eligible for release on

6

parole until his actual calendar time served, without
consideration of good conduct time, equals one-third of
the maximum sentence or 20 calendar years, whichever is
less.... All other prisoners shall be eligible for
release on parole when their calendar time served plus
any good conduct time equals one-third of the maximum
sentence imposed or 20 years, whichever is less.

(c) A prisoner who is not on parole ... shall be released to
mandatory supervision by order of the [Parole] Board
when the calendar time he has served plus any accrued
good conduct time equal the maximum term to which he was
sentenced."

Section 3f(a), Art. 42.12, Texas Code of Criminal Procedure,

as it read in 1977 provides that:

"[t]he provisions of Sections 3 and 3c of this Article do
not apply:

(1) to a defendant adjudged guilty of an offense defined by
the following section of the Penal Code:

* * *

(2) to a defendant when it is shown that the defendant used
or exhibited a deadly weapon ... during the commission
of a felony offense ..."

The State has obviously moved for summary judgment by

claiming that the Petitioner is not entitled to release on

mandatory supervision, and has probably cited the new statute

under the Texas Government Code.  A plain reading of the

recodified statute indicates, however, that the parole

eligibility and mandatory supervsion laws have undergone

substantial substantive change from the original enactment in

1977 to its present form.  See Appendix-E at pages 5-6 and

Appendic-C at pages 2-3 (citing examples of applications of the

newer statutes).  In this case, the Petitioner is not subject to

the substantive changes in the parole eligibility and mandatory

supervision laws now found in the Texas Government Code.

7

Appendix-C at page 3. The Petitioner is subject only to the
parole law and the mandatory supervision release law of 1977 in
effect at the time of his offense and sentence. He is entitled
to be released to mandatory supervision under Article 42.12, §
15(b) and (c).

The formula for determining mandatory supervision release is
identical to that for determining parole eligibility, that is,
when the calendar time served plus any good conduct time equals
one-third of the maximum sentence imposed or 20 years, whichever
is less. Because the Petitioner has served more than 20 years,
whether calculated as flat time or with good conduct time, his
request for habeas corpus relief should be granted. Please see
and consider the attached Appendix-C "Recommendation On Petition
For Writ Of Habeas Corpus" by Judge J. Manuel Banales, in Cause
No. 12404-D, 105th Judicial District Court, Nueces County, Corpus
Christi, Texas. It is significant to point out here that Judge
Banales is the same ultra-conservative Judge Banales who is now
the subject of nationwide publicity because of his harsh judgment
against criminal defendants. (Appendix-D, attached, "Does
'Scarlet Letter' Judge Cross The Line?", USA TODAY, Tuesday, July
10, 2001, Page 5A.). Hence, it is not a liberal reading of the
1977 mandatory release statute which the Petitioner now asserts.
Rather, it is the law in effect at the time of his sentence to
which he is entitled and wants enforced.

Here, the verdict is against the weight of the evidence for
the reason that the Petitioner is indeed entitled to release from
prison to mandatory supervision after serving 20 flat calendar
years.

CutePDF - www.testia.com

8

Moreover, a new trial should be granted because of the conduct of opposing counsel. That is, opposing counsel did not serve a copy of their motion for summary judgment on the Petitioner. The Petitioner deserves the right to defend his cause and to defend against adverse motions and against any evidence or documents purporting to attack him. The Respondent's conduct has unfairly affected the substantive rights of this Petitioner and has unduly influenced the outcome of these proceedings. Rule 56, Fed.R.Civ.Pro..

The Respondent did not file a motion for extension of time with the Court, and the Court did not grant an extension of its own initiative. The Respondent was 60+ days late of the initial show cause order.

The errors here are so fundamental that gross injustice will result if not corrected.

This Court has the right to alter or amend its judgment after judgment has been entered. Case law suggests that altering or modifying the Court's order is justified when it is necessary to incorporate new law and to correct a legal error or to prevent a manifest miscarriage of justice. Apendix's B & C. See: Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396 (4th Cir. 1998), cert. denied, 119 S.Ct. 869 (1999) and Cosgrove v. Bartolotta, 150 F.3d 729 (7th Cir. 1998) and Ford Motor Credit Co. v. Bright, 34 F.3d 322, 324 (5th Cir. 1994) (in considering Rule 59(e) request, court may take into consideration attorney's conduct).

9

V.

CONCLUSION, PRAYER AND RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully moves this Court to grant him a new trial and to set aside the Court's order filed July 2, 2001, and to thereafter grant the writ.

Respectfully Submitted,


Dan L. Ingham #309147
Petitioner, Pro Se
James V, Allred Unit
2101 FM 369 North
Iowa Park, Texas 76367-6568

10

CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has on this __10__ day of July, 2001, filed with the Clerk of the U.S. District Court, Brownsville Division, and served on opposing counsel a true and correct copy of the forgoing PETITIONER'S PRO SE MOTION FOR NEW TRIAL, AND TO ALTER OR AMEND THE JUDGMENT: Rules 59(a) and (e), Fed.R.Civ.Pro., by mailing same via U.S. MAil, first-class postage prepaid, properly enveloped and deposited in the prison institution';s internal mailbox for outside mailing, addressed to:

    Hon. Michael N. Milby, Clerk
    U.S. District Court
    Brownsville Division
    600 East Harrison Street
    Brownsville, Texas 78520

and

    Karyl Jean Krug
    Assistant Attorney General
    P.O. Box 12548, Capitol Station
    Austin, Texas 78711

Dan Ingham
Petitioner, Pro Se

*11,*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DAN L. INGHAM, | § | |
|     Petitioner, | § | |
| v. | § | CIVIL ACTION NO. B-01-001 |
| | § | |
| GARY L. JOHNSON, DIRECTOR, | § | |
| TDCJ,ID, | § | |
|     Respondent. | § | |

## UNSWORN DECLARATION OF DAN L. INGHAM

I, the undersigned, hereby declare under penalty of perjury that my name is Dan L. Ingham. I am the Petitioner in this action. I am a State prisoner presently confined at the James V. Allred Unit, Iowa Park, Texas under prisoner number 309147.

I was never served with a copy of the Respondent's motion for summary judgment in this action. I therefore never had a fair or meaningful opportunity to ever respond to or defend myself against the Respondent's claims and allegation.

Also, I was denied the right to cross-examine and to confront my accusor during the prison disciplinary proceeding complained of in the underlying petition. During the hearing, the telecom speaker malfunctioned and the Disciplinary Hearing Officer talked privately by telephone with the charging officer. I did not hear the charging officer's responses and was not allowed or permitted to cross-examine or to question the officer. The DHO did not repeat to me what the officer said, and he did not repeat my questions to the charging officer.

I have served more than twenty years flat in prison on a single life sentence. Based on my research of the law as it apply's to my particular case, I have reason to believe and I do believe that I am entitled to release to mandatory supervision. But I have been denied that release to mandatory supervision.

Furthermore, I have a copy of the Clerk's docket sheet in this case from July 2001, and it does not reflect that the Respondent ever filed a motion for extension of time to make a reply to my petition for habeas corpus. The Respondent was ordered to make a reply on or before March 3, 2001, but did not file a reply until May 2001, when he filed a motion for summary judgment. I was never served with a copy of that motion by the Respondent nor any documents or other affidavits or exhibits concerning summary judgment.

The forgoing is declared to under penalty of perjury as true and correct this __10th__ day of July, 2001.

_Dan L. Ingham_
Dan L. Ingham #309147
Declarant/Pro Se

*Petitioner's*
*APPENDIX-A*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 2 0 1998

NANCY DOHERTY, CLERK
By _____
        Deputy

CORNELIUS LEMONE GOVAN,  )
                          )
        Petitioner,       )
                          )
v.                        )        CIVIL ACTION NO.
                          )        1:97-CV-241-C
GARY L. JOHNSON, Director, )
Texas Department of Criminal Justice, )
Institutional Division,   )
                          )
        Respondent.       )

ENTERED ON DOCKET
7-21-98 _____ PURSUANT
TO F. R. C. P. RULES
88 AND 79a.

## MEMORANDUM OPINION AND ORDER

The Court has considered the Petition for Writ of Habeas Corpus by a Person in State

Custody filed by Petitioner, Cornelius Lemone Govan (Govan), filed on September 17, 1997,

pursuant to 28 U.S.C. § 2254. Respondent, Gary L. Johnson (Johnson), filed his Answer on October

27, 1997, and Govan filed a response on November 13, 1997. Johnson filed state court records

pertaining to Govan on November 14, 1997.

### STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. Govan filed his petition

after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA);

therefore, the AEDPA standards apply.

### BACKGROUND

Johnson has lawful and valid custody of Govan pursuant to judgments and sentences in the

350th Judicial District Court of Taylor County, Texas, in Cause Nos. 603-D and 614-D. Govan was

charged by two separate indictments for burglary of a building and aggravated robbery, both alleged

to have been committed on or about October 30, 1986. One prior conviction was alleged in each

PETITIONER'S Appendix -B



indictment for enhancement purposes. Govan entered a plea of not guilty to each indictment and proceeded to trial by jury on both indictments. The jury found Govan guilty on both indictments on March 24, 1987. Govan plead true to the enhancement paragraph in each indictment, and the jury assessed punishment at life imprisonment on the burglary of a habitation charge and ninety-nine (99) years imprisonment on the aggravated robbery charge, to run consecutively to the life sentence.

Govan appealed his convictions to the Eleventh Court of Appeals, and his convictions were affirmed in a consolidated appeal on October 15, 1987.

Govan filed two identical state writ applications challenging his each conviction, and the applications were denied by the Texas Court of Criminal Appeals, without written order, on May 14, 1997.

## GOVAN'S HABEAS ALLEGATIONS

1.   The trial court erred by imposing convictions and sentences for more than one offense arising out of the same transaction; and

2.   He was denied equal protection because TDCJ-ID is denying him a mandatory supervision release date on his life sentence.

## DISCUSSION

**Issue No. 1:**   **The trial court erred by imposing convictions and sentences for more than one offense arising out of the same transaction.**

Govan was charged with burglary of a habitation and aggravated robbery. Govan and another man entered the home of Jane Adams on or about October 30, 1986 while Adams was not home. While Govan and the other man were still in the home, the owner, Ms. Adams, came home. When she walked into the kitchen, the other man came from behind her and held a knife to her throat. Ms. Adams testified that Govan had been in her bedroom and had taken some jewelry and a VCR. She

2

Case 1:01-cv-00001   Document 13   Filed in TXSD on 07/19/2001   Page 14 of 23

was threatened, assaulted, forced into her car, and was driven to her bank. At the bank, the men cashed one of Ms. Adams' checks and she was later left on a dirt road.

The record reflects that Govan's initial intent was apparently to enter the home and commit theft (burglary of a habitation); however, the nature of the offense then changed to one of aggravated robbery.

Two indictments were returned against Govan on November 20, 1986, one for Burglary of a Habitation and one for Aggravated Robbery. Both indictments contained an enhancement paragraph alleging one prior felony conviction.

According to the trial court's docket sheet, both the state and Govan announced ready for trial on both indictments on March 23, 1987, and both cases proceeded to trial jointly before a jury. Each indictment was read to the jury and at the close of all the evidence, separate jury charges were submitted. The jury, in separate verdicts, found Govan guilty on each charge. Thereafter, Govan entered a plea of true to the enhancements provisions in each indictment, and the jury assessed punishment at life imprisonment on the Burglary of a Habitation charge and 99 years imprisonment on the Aggravated Robbery charge. The judgment and sentence on the Aggravated Robbery provided that the 99 year sentence was to run consecutively to the life sentence.

Although Govan argues that the two indictments were improperly joined for trial, Johnson responds only to an alleged claim of double jeopardy. Govan's response points out that he has never raised a double jeopardy claim, but is alleging an improper joinder.

Govan bases his improper joinder argument on former Tex. Penal Code §§ 3.01, et seq. which provided that a defendant could "be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Penal Code § 3.02 (Vernon, 1974). Section 3.01 defined

3

Case 1:01-cv-00001   Document 13   Filed in TXSD on 07/19/2001   Page 15 of 23

"criminal episode" as "the repeated commission of any one offense defined in Title 7 of this code

(Offenses Against Property)."  Govan's argument is that burglary of a habitation and aggravated

robbery are not the same offense and, therefore, could not be tried together in a single criminal action

pursuant to § 3.02.

The joinder of offenses committed before *September* 1, 1987, is governed by the law in effect

at the time the offense was committed.  *Nolte v. State*, 854 S.W.2d 304, 307 (Tex.App.—Austin 1993,

pet. ref'd).  "Before September 1, 1987, the penal code defined 'criminal episode' as the repeated

commission of only one property offense."  *Id.*

In *Ex parte Pena*, 820 S.W.2d 806 (Tex.Cr.App. 1991), the defendant was charged with

burglary of a habitation and aggravated robbery in one indictment.  The offenses were committed

in March, 1987.  The court found that misjoinder occurred because there was only one indictment

for two distinct statutory offenses, although both were "offenses against property."   Govan was

charged in two separate indictments.

As noted by the trial court's docket sheet, Govan announced ready for trial on both

indictments and both cases proceeded to trial at the same time.  There is nothing in the record to

indicate that Govan ever objected to trying both charges in the same trial.

> It has long been the rule in this State that where a defendant is faced
> with multiple pending indictments, those indictments may be
> consolidated into a single proceeding with the express or implied (by
> failure to object) consent of the defendant. (citations omitted)  As a
> result, appellant, in failing to object to the consolidation of the two
> indictments into a single trial, is deemed to have given his consent.
> Having consented to a single trial for both indictments, appellant is
> barred from complaining of the resulting multiple convictions.

4

Case 1:01-cv-00001   Document 13   Filed in TXSD on 07/19/2001   Page 16 of 23

*Milligan v. State*, 764 S.W.2d 802, 803 (Tex.Cr.App. 1989). *See also, Wedlow v. State*, 807 S.W.2d 847, 851 (Tex.App.–Dallas 1991, pet. ref'd) ("a defendant waives his right to severance if he agrees to, or fails to object to, prosecution of multiple indictments in a single trial."); *York v. State*, 848 S.W.2d 341 (Tex.App.–Texarkana 1993, pet. ref'd) (any error in consolidating two indictments into a single trial is waived when defendant fails to object); *Nolte*, 854 at 308 ("failure to timely object to the misjoinder waived his right to demand that this court set aside the convictions from the misjoined offenses").

Govan, having failed to object to the joinder of the two indictments for trial, waived his right to complain.

**Issue No. 2     Govan was denied equal protection because TDCJ-ID is denying him a mandatory supervision release date on his life sentence.**

Johnson acknowledges that Govan is correct in his assertion that he would be eligible for mandatory supervision on the burglary count. In fact, the records provided by Johnson indicate that Govan is being given flat time credit on his life sentence. Govan's complaint is that TDCJ-ID has not calculated a release date on his life sentence.

Johnson argues that, even though Govan is eligible for mandatory supervision on his life sentence, the aggravated robbery conviction excludes him from eligibility for release on mandatory supervision. His argument is based upon Tex. Code Crim. P. Ann. art 42.18 § 8(c)(11) (Vernon Supp. 1987), which provided that aggravated robbery was excluded from mandatory supervision eligibility. However, this provision did not become effective until September 1, 1987, and did not apply to offenses committed prior to the effective date of the Act. The law in effect at the time

Case 1:01-cv-00001   Document 13   Filed in TXSD on 07/19/2001   Page 17 of 23

Govan committed the offenses did not include the exclusion of certain offenses from eligibility for mandatory supervision. *See* Tex. Code Crim. P. Ann. art. 42.18 § 8(c) (1986), which provided that:

> A prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced.

Tex. Civ. Stat. Ann. art. 6181-1 defined "term" to be "the maximum term of confinement in the Texas Department of Corrections stated in the sentence of the convicting court." However, when two or more sentences were to be served consecutively (as in Govan's case), the term was to be determined as provided in Tex. Code Crim. P. Ann. art. 42.18 § 8(b). Section 8(b), which was in effect when Govan committed his offenses and was sentenced, provided that:

> If a prisoner is serving a sentence for the offenses listed in Subdivision (1), Subsection (a), Section 3g, Article 42.12 of this code, or if the judgment contains an affirmative finding under Subdivision (2) of Subsection (a) of Section 3g of that article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years.

Aggravated Robbery was a listed offense, and there was an affirmative finding in Govan's judgment and sentence on the Aggravated Robbery charge that a deadly weapon was used. Therefore, even though Govan is eligible for mandatory supervision on both the burglary of a habitation and aggravated robbery charges, he would not be eligible for release until he has served at least 20 calendar years.

## CONCLUSION

The Court finds that Govan's Petition for Writ of Habeas Corpus should be granted in part and denied in part, as follows:

Case 1:01-cv-00001   Document 13   Filed in TXSD on 07/19/2001   Page 18 of 23

(1)     Govan's petition seeking a finding that he is eligible for mandatory supervision on both the life sentence and the 99-year sentence is GRANTED; however, he would not be eligible for release until he has served at least 20 calendar years; and

(2)     Govan's Petition for Writ of Habeas Corpus seeking to set aside his convictions for improper joinder should be and it is hereby DENIED.

All relief not expressly granted is denied and any pending motions are denied.

SO ORDERED.

Dated July 20, 1998.

SAM R. CUMMINGS
United States District Judge

7

# IN THE DISTRICT COURT
# OF NUECES COUNTY, TEXAS
# THE 105TH JUDICIAL DISTRICT OF TEXAS

**EX PARTE**

**DAVID ROBLES**
**[ID/TDCJ #193550]**

NO. 12404-D

## RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

On or about March 17, 1999 Applicant, DAVID ROBLES, filed his "Petition for Writ of Habeas Corpus" with the Clerk of this Court. The State was served March 17, 1999. On June 28, 1999 Applicant filed an application for writ of mandamus against the Judge of this Court in the Court of Appeals at Corpus Christi. On June 29, 1999 the Court of Appeals denied the application. On July 14, 1999 the State filed its Answer. On July 26, 1999 Applicant filed his "Motion to Dismiss" the State's Answer and his response to the State's answer.

Applicant is presently imprisoned under a judgment of conviction dated April 6, 1966 for the offense of Robbery by Assault under the 1925 Penal Code on a sentence of Life assessed by the jury. Applicant has been in and out of prison on several occasions since then. His prior applications for writ of habeas corpus have been denied by the Court of Criminal Appeals.

This Court has not located the original Application filed on or about March 17, 1999. It was not aware that the Application had been filed until it learned of the denial of the application for writ of mandamus from the Court of Appeals. Since then this Court has obtained a copy of the Application; the copy does not show when it was received or filed by the Clerk of this Court.

After the State filed its Answer, Applicant filed his motion to dismiss the State's Answer because the Answer was filed more than three months after it was served with the petition. Having considered the motion, this Court is of the opinion that the motion should be denied.

In the present Petition, Applicant contends that he has been denied his release on mandatory supervision as required by former Art. 42.12, §15(b) and (c), Tx.C.Cr.P., effv. August 29 1977,

*[Mandatory Release Life] -- Page 1*

830005

PETITIONER'S Appendix-C

repealed, *and now codified as* §§508.145-508.149, Govt.C.  He claims that the denial violates the due course of law provision of Art. 1, §19, TX. CONST., and the due process clause of the 5th and 14th Amendments to the United States Constitution.  Attached to his petition is his time credits record, which shows that, as of February 4, 1999, he had credits of:

| | | | |
|---|---|---|---|
| "Flat Time Served | 27 Years | 08 Months | 09 Days |
| Good Time Earned | 42 Years | 09 Months | 12 Days |
| Mandatory Supervision Time Credits: | 70 Years | 05 Months | 21 Days |
| Parole Time Credits | 70 Years | 05 Months | 21 Days |

Discharge Date with Commutation and Trusty Time: 01/01/99

Jail Good Time Rec[eive]d: Yes

Good Time Lost: 0000 Days."

In its Answer, the State "takes Applicant's recitation of the facts as true."  Accordingly, the Court finds that Applicant has time credits as stated above.

As stated earlier, Applicant relies on former Art. 42.12, §15(b) and (c), Tx.C.Cr.P.  Those subsections state in relevant part as follows:

(b) "... If a prisoner is serving a sentence for the offenses listed in Section 3f(a)(1) of this Article or if the judgment contains an affirmative finding under Section 3f(a) of this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, ... .  All other prisoners shall be eligible for release on parole when their calendar time served plus any good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less.

(c) A prisoner who is not on parole ... shall be released to mandatory supervision by order of the [Parole] Board when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced."

Section 3f(a), Art. 42.12, Tx.C.Cr.P., as it read in 1977, provides that

"[t]he provisions of Sections 3 and 3c of this Article do not apply:

(1) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

...

(E) Section 29.03 (Aggravated robbery); or

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon ... during the commission of a felony offense or during immediate flight therefrom."

*[Mandatory Release Life] -- Page 2*

830006

The State responds that the statutes concerning parole, "including those cited by this applicant, have been moved to the Texas Government Code, where the provisions regarding parole were codified, *without substantive change*, ... " *[emphasis added]*. A plain reading of the codified statute, however, shows that the parole eligibility law has undergone substantial substantive change from the original enactment in 1977 to its present form. For example, a person convicted of a capital felony and sentenced to life must serve, without consideration of good conduct time, at least 40 years before he is eligible for parole, §508.145(b), Govt.C.; a person convicted of a felony, found to be a habitual felony offender and sentenced to life must serve, without consideration of good conduct time, at least 35 years before he is eligible for parole, §508.145(c), *supra*; a person convicted of an Art. 42.12, §3g, Tx.C.Cr.P., felony must serve, without consideration of good conduct time, one-half of the sentence or 30 years, whichever is less, before he is eligible for parole, §508.145(d), *supra*; any other person convicted of any other felony is eligible for parole when his actual calendar time plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less, §508.145(e), *supra*. The Court finds that Applicant is not subject to the substantive changes in the parole eligibility law now found in the Government Code.

Moreover, assuming that §508.145, *supra*, were applicable, the State suggests that "Applicant must serve at least 35 years, without consideration of good conduct time, Tex. Gov't Code § 508.145(c)," before he is eligible for parole. The State assumes that Applicant was convicted of Aggravated Robbery. The indictment shows, however, that Applicant was charged with the offense of Robbery by assault under the prior law, and he was so convicted. He was not charged with nor convicted of the offense of *Aggravated* Robbery.

The Court finds, therefore, that Applicant is subject to the parole and mandatory release law of 1977. Applicant is entitled to be released to mandatory supervision under Art. 42.12, §15 (b) and (c).

Finally, the Court finds that the formula for determining mandatory supervision release is identical to that for determining parole eligibility, that is, when the calendar time served plus any good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less. Because Applicant has served more than 20 years, whether calculated as flat time or with good conduct time, his request for relief should be granted.

*[Mandatory Release Life] -- Page 3*

830007

Having fully reviewed the Application, the Court finds that there are no controverted, previously unresolved facts material to the legality of the Applicant's imprisonment under the judgment of conviction in this cause and that no evidentiary hearing is required.

IT IS THEREFORE THE RECOMMENDATION of this Court that Applicant be granted the relief he requests.

The Clerk of the Court is directed to transmit the record of the cause, including the indictment, the judgment of conviction and sentence, the pending Application, the State's answer, the application for writ of mandamus, Applicant's "Motion to Dismiss," Applicant's response to the State's answer, and this Court's findings and recommendations to the Clerk of the Court of Criminal Appeals.

The Clerk shall mail a copy of this Court's findings and recommendations to the Applicant and the State.

Signed August 25, 1999.

J. MANUEL BAÑALES
JUDGE PRESIDING

*[Mandatory Release Life] -- Page 4*

830008

PETITIONER'S APPENDIX-D

## Nation

# Does 'Scarlet Letter' judge cross the line?

### Some applaud Texas jurist for making creative approach to sentencing sex offenders

Larry Copeland
USA TODAY

CORPUS CHRISTI, Texas — First, the District Judge J. Manuel Banales imposed a unique probation condition on Robert Torres, a 19-year-old sex offender: No sex until he's married.

Then, Banales ordered other sex offenders in the city of 381,000 to post signs that warn of their offenses in their yards and on their automobiles.

Now, the State Commission on Judicial Conduct, which considers complaints against judges, is scrutinizing Banales' actions, according to Gerald Rogen, Torres' attorney.

Rogen, president of the Coastal Bend Criminal Defense Lawyers Association, says he will ask the 13th Court of Appeals this week to overturn Banales' ruling on the signs. He's also asking the court to use Banales from Torres' case and to modify the conditions of his probation — life in prison if he violates the no sex order.

Banales, 50, touched off a wave of controversy — and earned the moniquet "the Scarlet Letter judge" on May 18. After reviewing probationers' statuses, he ordered 14 of about 45 registered sex offenders to place 18- by 24-inch warning signs in their yards: "DANGER: Registered Sex Offender Lives Here." Banales ordered them to put similar signs in automobiles they own and bumper stickers on cars they own.

"I think a lot of people here think, hey, that's really kind of going out of line," says Douglas Tinker, a lawyer who has known Banales for 15 years.

Banales, a 14-year veteran of the bench in Nueces County, says he's simply following the law. He says it authorizes a judge to require a sex offender on probation to notify the public of the crime he or she committed.

Judge Mike Westergren has known Banales for more than 20 years. He says the sign order came shortly after a man with a prior sexual-offense conviction was tried and guilty of attempted sexual assault in Westergren's courtroom. The man lured a 12-year-old girl into his house, which was along her route to school, and attempted to sexually assault her.

Banales "said she wouldn't have one in the house if there had been signs," Westergren says.

Banales' critics argue that he has overstepped the law and is creating setting ripe for public harassment and vigilantism against sex offenders on probation. They also say the signs will result in declining property values.

"Judge Banales went outside the scope of the state Legislature in defining what sex offender notification should entail and created his own method of notification that violates these individuals' constitutional rights," says Diana Philip, a board member of the American Civil Liberties Union of Texas. The ACLU is providing legal assistance to Rogen.

Banales, one of eight judges in Nueces County, is the only one to implement such orders. He says he doesn't know whether he's being investigated, and he declines to comment on whether his rulings will withstand appeals. "It would be inappropriate for me to comment," he says.

The State Commission on Judicial Conduct does not confirm or deny investigations of judges, says Seana Willing, the commission's general counsel. The commission is made up of 11 members and one investigator. It investigated 1,200 complaints against Texas' 3,550 judges in fiscal year 2000. On average, she says, inquiries take four to six months.

The commission may dismiss a case, reprimand a judge privately, censure him or her publicly or recommend that a judge be suspended or removed, Willing says.

Robert Dawson, law professor at the University of Texas-Austin and an expert on state legal matters, says Banales was well within his legal rights to order the signs. "It's not illegal, it's just dumb," he says. "I believe doing it was more for the publicity than in an honest belief that it deters future crime."

Exactly one month before he issued the sign order, Banales ordered Torres not to have sex until he gets married. Torres had been sentenced in 1999 to five years' probation after pleading guilty to having sex with a 13-year-old. The teenager told authorities that Torres was her boyfriend.

During a probation revocation hearing on April 18, Banales learned that Torres had fathered a daughter with a 16-year-old girl and had impregnated a 17-year-old while on probation. Torres violated probation by drinking beer, smoking marijuana and visiting his 1-year-old daughter. Banales sentenced him to five more years' probation, 30 days in jail and no sex.

Banales says he was concerned that Torres was involved "with so many women, two of them were girls, and getting them pregnant without supporting them. I felt he needed some stability, and a marriage contract is one way of showing that he is truly committed."

Banales' supporters applaud him for tackling the problem of teen pregnancy in a creative manner.

"Our county has one of the highest rates of teen pregnancy in Texas and probably the U.S., and he's trying to address that in a creative way," says retired district judge Robert Pate of Corpus Christi. "People here ... congratulate him out of the blue for his character, courage and conviction."

Others have a different opinion.

"Judges have done some weird things," Dawson says. "Sometimes I think the dye in those black robes is toxic, and it seeps into their skin and causes judicial dementia."



**Courting controversy:** Critics say that Judge J. Manuel Banales has overstepped the law by making sex offenders place signs in yards.
By Paul Iverson, Corpus Christi Caller-Times, via AP



**"Danger":** A sign warning of danger from a registered sex offender is posted in front of a residence in Corpus Christi, Texas.
By David Pellerin, Corpus Christi Caller-Times, via AP